SANTA MOLINA ET AL., peticionarias, *v.* CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA ET AL., demandados y recurridos.

*Número:* O-81-597    *Resuelto:* 11 de mayo de 1983

*Lourdes E. Zayas,* abogada de las peticionarias; *Luis M. Angelet Frau,* de *Dubón, González & Vázquez,* abogado de la recurrida CRUV; *Miguel A. Rivera,* abogado del recurrido Jaime Torres Gaztambide; *Wilfredo Rodríguez Mercado,* abogado de la recurrida Castellanos y Hermanos; *Ángel L. Flores Fernández,* del Departamento de Justicia, abogado del recurrido Estado Libre Asociado de Puerto Rico; *Lourdes R. Díaz Antommattei,* abogada de la recurrida Asociación de Garantía de Seguros Misceláneos.

PER CURIAM: La niña María del Carmen Pastrana Molina se cayó del cuarto piso de uno de los edificios del Residencial Jardines de Cupey, propiedad de la Corporación de

Renovación Urbana y Vivienda, sufriendo serias lesiones que la han incapacitado permanentemente. El accidente dio motivo a la reclamación de daños objeto del presente recurso contra las recurridas CRUV y su aseguradora Interstate General Corporation. Con posterioridad a la presentación de la demanda, las demandantes, aquí peticionarias, se trasladaron a los Estados Unidos para gestionar un tratamiento médico más adecuado para María del Carmen. Por tal razón, la aseguradora Interstate solicitó que se cumpliera con las disposiciones de la Regla 69.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, y se les exigiera la prestación de una fianza de no residente por la cantidad de $1,000. (1) Objetaron el pedimento las recurrentes por razón de indigencia y solicitaron a la vez dispensa. Notificaron al Secretario de Justicia la impugnación de la validez constitucional de dicha regla, por alegadamente quebrantar las garantías del proceso conforme a derecho y de la igual protección de las leyes. El Secretario sostuvo la validez de la regla, aduciendo que la clasificación en ella contenida no se fundamentaba en un criterio económico sino en el de residencia, por lo que tal clasificación no era sospechosa. Argumentó, además, la justificación racional de la fianza como medio para garantizar a la parte victoriosa que los demandantes no residentes que pierden el pleito sufraguen las costas, gastos y honorarios de abogado a la parte victoriosa.

---

(1) La Regla 69.5 provee:

"Cuando el demandante residiera fuera de Puerto Rico o fuere una corporación extranjera, se le requerirá para que preste fianza para garantizar las costas, gastos y honorarios de abogados en que pudiere ser condenado. Todo procedimiento en el pleito se suspenderá hasta que se preste la fianza, que no será menor de mil ($1,000) dólares. El tribunal podrá ordenar que se preste fianza adicional si se demostrare que la fianza original no es garantía suficiente, y se suspenderán los procedimientos en el pleito hasta que se hubiere prestado dicha fianza adicional.

"Transcurridos noventa (90) días desde la notificación de la orden del tribunal para la prestación de la fianza o de la fianza adicional, sin que la misma se hubiere prestado, el tribunal ordenará la desestimación del pleito."

El tribunal de instancia dictó resolución en que ordenó a las recurrentes a prestar la fianza solicitada y paralizó los procedimientos hasta que la misma se prestase.

A instancia de las recurrentes, paralizamos los procedimientos en auxilio de nuestra jurisdicción y emitimos resolución en que concedimos un término a los recurridos para que mostraran causa por la cual no debíamos exonerar a las recurrentes del requisito de fianza de no residentes. Oportunamente comparecieron los recurridos en un escrito en que objetaron la expedición del auto. Hemos considerado detenidamente sus argumentos, pero no nos persuaden a alterar la posición intimada en nuestra orden de mostración de causa. Exponemos a continuación los fundamentos para la revocación de la resolución recurrida.

■ No tenemos que considerar la impugnación de las recurrentes de la validez constitucional de la aplicación a su caso del requisito de fianza, pues la interpretación del estatuto permite atender adecuadamente sus planteamientos. Al así disponer del asunto no hacemos mas que seguir la norma consistentemente reiterada por este Tribunal de no abordar cuestiones constitucionales cuando se puede resolver el caso en armonía con los criterios del recurrente y en consonancia con los mejores fines de la justicia. *Mari Bras* v. *Alcaide*, 100 D.P.R. 506, 513 (1972); *Pueblo ex rel. M.G.G.*, 99 D.P.R. 925, 927 (1971).

■ Como se sabe, la Regla 69.5 de Procedimiento Civil tiene el propósito de garantizar a la parte victoriosa el pago de las costas, gastos y honorarios de abogado por el litigante no residente que ha perdido el pleito. *Práctica Procesal Puertorriqueña*, Vol. II, pág. 404. Debe notarse que la fianza no es requerida insoslayablemente en todo caso, sino que a tenor con la Regla 69.6 se dispensa de la misma al Estado Libre Asociado de Puerto Rico, a los cónyuges en pleitos de divorcios, de relaciones de familia o sobre bienes gananciales y en reclamaciones de alimentos. Esta dispensa selectiva sigue la tónica flexible de esencial justicia sentada

en la Regla 56.3(2) con respecto a los aseguramientos de sentencia.

Cuando se tratare de un litigante insolvente que estuviere expresamente exceptuado por ley para el pago de aranceles y derechos de radicación y a juicio del tribunal la demanda adujere hechos suficientes para establecer una causa de acción cuya probabilidad de triunfo fuere evidente o pudiere demostrarse, y hubiere motivos fundados para temer, previa vista al efecto, que de no obtenerse inmediatamente dicho remedio provisional, la sentencia que pudiera obtenerse resultaría académica porque no habría bienes sobre los cuales ejecutarla.

Ambas disposiciones tienen propósitos análogos en beneficio de litigantes insolventes que deben ser interpretadas de modo que garanticen una solución justa, rápida y económica, principio rector en la interpretación de las Reglas de Procedimiento Civil.

■ De lo anterior podemos razonablemente colegir la intención del legislador de abrir las puertas de los tribunales a los litigantes pobres. Es por eso que concluimos que en virtud de la Regla 56.3 un litigante indigente que vive fuera del país está exento de prestar fianza de extranjero, claró está, siempre que demuestre que su razón de pedir puede tener méritos.

*Se dictará sentencia en la que se revoque la resolución recurrida y se devuelva el caso para ulteriores procedimientos.*

El Juez Asociado Señor Irizarry Yunqué emitió opinión concurrente a la que se une el Juez Presidente Señor Trías Monge. El Juez Asociado Señor Negrón García emitió opinión concurrente. El Juez Asociado Señor Díaz Cruz se inhibió.

—O—

Opinión concurrente del Juez Asociado Señor Irizarry Yunqué a la cual se une el Juez Presidente Señor Trías Monge.

No creo en perpetuar cosas inútiles en nuestros ordenamientos jurídicos. En virtud de la per curiam que hoy emite este Tribunal, se evade declarar la inconstitucionalidad de la Regla 69.5 de Procedimiento Civil, ([1]) pero se le relega a un limbo. Pasa a la hilera de las momias en el museo de curiosidades anacrónicas del Derecho puertorriqueño. Allí reposará junto a figuras de mejores tiempos, como los derechos sobre mutación de cauce de los ríos, los de conmistión de cosas muebles, los censos y los *coram nobis*, entre otros.

El Tribunal se escuda en la respetable norma de abstención cuando se está frente a un ataque a la validez de una actuación legislativa, no siempre seguida. Véase, para el más reciente ejemplo, *Soto* v. *Srio. de Justicia*, 112 D.P.R. 477 (1982). No podemos pasar por alto que las vigentes Reglas de Procedimiento Civil, si bien rigen porque así lo quiso la Asamblea Legislativa, son de manufactura judicial por haberse adoptado por este Tribunal en virtud del Art. V, Sec. 6 de nuestra Constitución. Y se elabora, para evadir el serio problema de discrimen contra litigantes pobres no residentes que propicia la Regla 69.5, un argumento silogístico a base de las Reglas 69.6 y 56.3(2) que parte de una premisa errónea. Se dice que la dispensa selectiva del requisito de fianzas que se hace en la 69.6 —que favorece al Estado y sus funcionarios, a las corporaciones públicas y a los municipios, a las partes en pleitos de divorcio, de relaciones de familia y sobre bienes gananciales, y en reclama-

---

([1]) Dice así:

Regla 69.5. *De no residentes*

"Cuando el demandante residiere fuera de Puerto Rico o fuere una corporación extranjera, se le requerirá para que preste fianza para garantizar las costas, gastos y honorarios de abogados en que pudiere ser condenado. Todo procedimiento en el pleito se suspenderá hasta que se preste la fianza, que no será menor de mil (1,000) dólares. El tribunal podrá ordenar que se preste fianza adicional si se demostrare que la fianza original no es garantía suficiente, y se suspenderán los procedimientos en el pleito hasta que se hubiere prestado dicha fianza adicional.

"Transcurridos noventa (90) días desde la notificación de la orden del tribunal para la prestación de la fianza o de la fianza adicional, sin que la misma se hubiere prestado, el tribunal ordenará la desestimación del pleito."

ciones de alimentos— "sigue la tónica flexible de esencial justicia sentada en la Regla 56.3(2)". Págs. 297-298.

Esta Regla —la 56.3(2)— dispensa del requisito de fianza a litigantes indigentes en determinados casos. No alcanzo a comprender la validez de ubicar a los litigantes indigentes junto al Estado y sus funcionarios, las corporaciones públicas y las corporaciones municipales, y las partes en pleitos sobre bienes gananciales. La "tónica flexible de esencial justicia" para los pobres no puede estar junto a los privilegios que se conceden a entidades y partes que se presumen solventes o que litigan por repartirse bienes adquiridos. Es de notar, además, que la Regla 56, en la forma en que está concebida, se refiere a medidas para asegurar la efectividad de la sentencia.

Concurro en el resultado a que llega este Tribunal, que obviando una confrontación con los términos claros y libres de ambigüedad de la Regla 69.5, aplica lo dispuesto en la 56.3(2) y exonera a las demandantes aquí peticionarias del requisito oneroso de prestar fianza de no residentes. Opino, sin embargo, que la Regla 69.5 es inconstitucional y así debió declararlo este Tribunal. Dicha regla, como más adelante señalaré, viola la cláusula de nuestra Constitución sobre igual protección de las leyes, no porque discrimine contra los no residentes, que es a lo que aluden tanto el tribunal de instancia en su resolución aquí recurrida como el Secretario de Justicia en su argumentación, sino porque permite que se discrimine contra los que demanden en nuestros tribunales la vindicación de sus derechos, pero no residan en Puerto Rico y por ser pobres no puedan prestar la fianza que exige dicha regla. Es decir, discrimina contra los demandantes no residentes *que sean pobres*. Considero, además, que esta regla viola el derecho de los demandantes que estén en esa situación y que reclamen por daños y perjuicios que se les hayan causado, a no ser privados de su propiedad sin el debido procedimiento de ley.

I

Veamos los hechos de este caso en algún detalle. En virtud de demanda sobre daños y perjuicios basada en alegada culpa y negligencia de los demandados, doña Santa Molina, por sí y en representación de su hija María del Carmen, reclamaron ser indemnizadas. Se alegó que el 16 de marzo de 1973 María del Carmen, quien entonces contaba tres años de edad, se cayó del apartamento en que vivía con su señora madre en un cuarto piso del Residencial Jardines de Cupey, en Río Piedras, propiedad de la CRUV, de la cual la señora Molina era inquilina. Se alegó que la caída causó fractura del cráneo y contusiones a la niña que la han incapacitado total y permanentemente. Se predicó la alegación de negligencia, entre otros factores, en el incumplimiento por parte de los demandados de determinados requisitos de seguridad impuestos por reglamentación de la Junta de Planificación de Puerto Rico.

Emplazados los demandados, trabada la contienda litigiosa y luego de varios años de trámite, la codemandada Interstate General Contractors, Inc., el 17 de septiembre de 1980, solicitó del tribunal que conforme a la Regla 69.5 de Procedimiento Civil se ordenara a las demandantes prestar fianza de no residentes en una suma no menor de $1,000, toda vez que éstas se habían trasladado a residir a la ciudad de Boston en los Estados Unidos. Solicitó, además, la paralización de los procedimientos hasta que se prestara la fianza.

En escrito de oposición y solicitud de dispensa de prestar fianza adujeron las demandantes que, si bien residen en la ciudad de Boston, son personas pobres y no pueden prestar la fianza. Expusieron que se desconoce el paradero del padre de la niña, quien nada aporta a su sostenimiento; que la madre, persona de escasa preparación académica, se desempeñó ocasionalmente como obrera no diestra en Puerto Rico, sosteniéndose mediante los programas de beneficencia pública; que se trasladó a Boston para que

María del Carmen pudiera recibir adecuado tratamiento para su condición en instituciones hospitalarias gubernamentales, siendo su propósito regresar a Puerto Rico cuando la condición de la niña lo permita; que ambas son personas pobres y no han podido "cumplimentar [*sic*] los requisitos de las compañías de fianzas de Puerto Rico, las cuales exigen, como requisito previo para prestar la fianza de no residente, la solvencia económica de la parte solicitante"; que "[no] estando [*sic*] accesible para la Sra. Santa Molina el conseguir una fianza en los términos indicados, la alternativa sería prestarla en efectivo, lo cual es imposible por no tener medios para hacerlo, o una fianza hipotecaria, la cual supone la tenencia de un inmueble, el cual no está en su patrimonio". Plantearon, además, las demandantes que la aplicación de la Regla 69 de Procedimiento Civil estaría reñida con las distintas disposiciones constitucionales relativas al debido proceso de ley y a la igual protección de las leyes.

La codemandada Interstate, invocó nuestra decisión en *Planned Credit of P.R., Inc.* v. *Page*, 103 D.P.R. 245, 253 (1975), en que expresamos:

> Bajo el lenguaje de la Regla 69.5 un tribunal no tiene facultad discrecional para eximir a un demandante no residente o a una corporación extranjera del requisito de fianza y ordenada la misma, el procedimiento debe suspenderse hasta que sea prestada y en su defecto, una vez transcurridos 90 días, debe desestimarse la acción. La regla tampoco confiere autoridad para fijar el monto de dicha fianza en una suma menor a la de trescientos dólares ($300.00).

Interstate distinguió, además, el caso de *Boddie* v. *Connecticut*, 401 U.S. 371 (1971), invocado por las demandantes, quedando planteada por ambas partes la constitucionalidad de la citada Regla 69.5. Advertido de ello el tribunal de instancia, requirió que se notificara al Secretario de Justicia de conformidad con la Regla 21.3 de Procedimiento

Civil. (²) Así se hizo, compareció dicho funcionario en el descargo de su obligación y finalmente el tribunal, en resolución de 19 de junio de 1981, sostuvo que la clasificación que hace la Regla 69.5 es entre residentes y no residentes y no a base de condición económica —clasificación que no es sospechosa—, que la regla no viola el debido proceso de ley y que, por tanto, es constitucional. Las demandantes recurrieron a nos en solicitud de auto de *certiorari*. Concedimos plazo a la parte recurrida y al Secretario de Justicia para mostrar causa por la cual no debíamos revisar y revocar dicha resolución.

## II

Podría argüirse que no es menester abordar el planteamiento constitucional, porque de los autos surge el propósito de las demandantes de regresar a Puerto Rico una vez la condición de la niña lo permita y a base de ello podría concluirse que no han dejado de ser "residentes" de aquí. Pero no es ese el significado de "residencia" en el contexto de la Regla 69.5.

El propósito de la regla está expresado en su texto: "garantizar las costas, gastos y honorarios de abogados en que pudiera ser condenado [el demandante no residente]". Véase, *Blatt & Udell* v. *Core Cell*, 110 D.P.R. 142, 146 (1980). Ciertamente, la ausencia de un litigante de nuestra jurisdicción presenta el grave inconveniente de su inaccesibilidad a los fines de hacer efectivo el recobro de dichas partidas. En tal caso, la parte prevaleciente tendría que acudir a la jurisdicción de la residencia del demandante foráneo para pedir la ejecución allí de su sentencia, lo que

---

(²) Dicha Regla 21.3 dispone:

"Siempre que la constitucionalidad de una ley, orden ejecutiva, franquicia o reglamento administrativo del Estado Libre Asociado de Puerto Rico se impugnare en algún pleito en que éste o algún funcionario o agencia del mismo no fuere parte, el tribunal ordenará que se notifique dicha impugnación al Secretario de Justicia y permitirá la intervención del Estado Libre Asociado de Puerto Rico."

en ocasiones resulta ser económicamente impracticable. Es en armonía con el propósito de la regla que debe interpretarse su aplicación a los hechos del caso. Al así hacerlo se cumple el principio de hermenéutica que atribuye esencial importancia a las razones que produjeron la norma y los hechos a los cuales la norma ha de aplicarse. *Cf. Sales* v. *Samac Motor Corp.*, 92 D.P.R. 529, 540 (1965).

En *P.P.D.* v. *Admor. Gen. de Elecciones*, 111 D.P.R. 199, 248 (1981), expresamos que "[e]l concepto 'domicilio' es muchas veces confundido con el de 'residencia', particularmente en el lenguaje popular, y en ocasiones se advierte la errónea sinonimia aun en el lenguaje técnico legal". Así, hemos dicho en ocasiones que residencia significa domicilio, *e.g., Fiddler* v. *Srio. de Hacienda*, 85 D.P.R. 316, 324 *et seq.* (1962), y en otras ocasiones hemos aclarado que la residencia que prevé un estatuto no es equivalente a domicilio. *Prawl* v. *Lafita Delfín*, 100 D.P.R. 35 (1971) (residencia requerida por el Art. 97 del Código Civil en acciones de divorcio), y *Ex parte Warren*, 92 D.P.R. 299 (1965) (residencia requerida por el Art. 130 del Código Civil en procedimientos de adopción).

La Regla 69.5 proviene del Código de Procedimiento Civil de California. En buena hermenéutica, es procedente conocer la interpretación que en aquella jurisdicción se ha dado a este asunto. El caso de *Myers* v.ʹ*Carter*, 178 C.A. 2d 622, 625–626, 3 Cal. Rptr. 205 (1960), es orientador. Allí se resolvió que la Sec. 1030 de dicho Código, que establece el requisito de fianza a no residentes, aplica a un domiciliado ausente del Estado, aunque sea de forma temporera.

Tomando en consideración que el requisito de fianza en esta regla está basado, como hemos dicho, en la probable dificultad o impracticabilidad de hacer efectiva la condena de costas contra una persona que no habita dentro de la demarcación territorial del Estado del foro, se sirve mejor el propósito de la regla adoptando el criterio de residencia simple y no el de domicilio. *Morek* v. *Smolak*, 282 N.Y.S. 418, 419 (1935).

En consecuencia, las demandantes no pueden escapar al requisito de fianza de no residentes por el hecho de estar domiciliadas en Puerto Rico. Ante esta conclusión debemos atender, pues, su reclamo de inconstitucionalidad a base de que la regla discrimina contra los litigantes pobres en abierta infracción de las cláusulas de igual protección y de debido procedimiento de ley.

## III

Al atacar la validez constitucional de la Regla 69.5, las peticionarias invocan tanto la Constitución federal como la del Estado Libre Asociado. Las interpretaciones dadas a la Constitución federal por el Tribunal Supremo de Estados Unidos no les son, sin embargo, favorables.

Hasta el presente, dicho alto Tribunal no ha reconocido la obligación de los estados, y para el caso, la del Estado Libre Asociado de Puerto Rico, de franquear a los litigantes pobres el acceso a los tribunales en casos civiles mediante la exoneración de aranceles, gastos o costas. Las únicas excepciones lo han sido en los casos en que está involucrada de algún modo una "relación humana fundamental", *Boddie*, supra (divorcio), y *Lassiter* v. *Department of Social Services*, 452 U.S. 18 (1981) (terminación de la relación paterno-filial); o cuando el procedimiento, aunque civil por su nomenclatura, comparta perfiles cuasicriminales, *Little* v. *Streater*, 452 U.S. 1 (1981) (abandono de menores con determinación de paternidad). Véase, además, *United States* v. *Kras*, 409 U.S. 434 (1973) (el requisito de pago del arancel de presentación como condición a la quita o exoneración en un procedimiento de quiebra voluntaria no infringe el derecho de un indigente a la igual protección de las leyes), y *Ortwein* v. *Schwab*, 410 U.S. 656 (1973) (es válido un arancel de apelación según aplicado a indigentes que apelan de decisiones adversas de bienestar social).

*Boddie*, supra, pág. 383, sentó la norma de acceso a los tribunales respecto a litigantes pobres. Invalidó un arancel

de presentación de aproximadamente sesenta dólares para las acciones de divorcio, porque siendo el matrimonio una "relación humana fundamental" que no puede ser disuelta sino por el único medio que provee el Estado para ello —el divorcio— un estado no puede, a tenor con la cláusula de debido procedimiento de ley de la Decimocuarta Enmienda, monopolizar el derecho de disolver dicha relación jurídica sin brindar a todas las personas acceso igual a los medios que ha establecido para ello.

Al establecer esta norma, el Tribunal Supremo federal ha declinado la invitación de un crecido número de autores y comentaristas para que se reconozca plenamente el derecho de los indigentes de tener acceso al foro judicial en igualdad de condiciones que los demás litigantes. Después de todo, las desigualdades sociales y económicas son inherentes a un sistema de gobierno donde los medios de fortuna miden, supuestamente, el logro de la iniciativa individual. Desde este punto de vista, no es malo per se que haya pobres. "No obstante, la Constitución" —ha dicho el Tribunal— "no provee remedios judiciales para cada mal social y económico." *Lindsey* v. *Normet*, 405 U.S. 56, 74 (1972). Pero esto no significa, desde luego, que los estados o Puerto Rico no puedan o no deban actuar para nivelar hasta donde sea posible las desigualdades del sistema. "Una política pública juiciosa, sin embargo, puede requerir que se adopten estándares mucho más elevados que los mínimamente tolerables bajo la Constitución [federal]." *Lassiter*, supra, pág. 33.

Se colige de todo lo anterior que, como los derechos y obligaciones que se originan en actos u omisiones culposos o negligentes no establecen una "relación humana fundamental", el litigante no tendría, a tenor con la Constitución federal, ningún derecho de utilizar los tribunales para vindicar su pérdida.

Las peticionarias no quedan, sin embargo, desprovistas de protección, pues la Constitución del Estado Libre Asociado de Puerto Rico puede establecer unos estándares cons-

titucionales superiores a los de la Constitución federal, aun cuando estemos interpretando y aplicando cláusulas equivalentes. *Pueblo* v. *Lebrón,* 108 D.P.R. 324 (1979); y *Pueblo* v. *Dolce,* 105 D.P.R. 422, 426–431 (1976).

IV

La cláusula de nuestra Constitución sobre igual protección en que basan las peticionarias su impugnación de la Regla 69.5, prohíbe que la ley distinga injustificadamente entre grupos de personas. La Constitución no prohíbe, sin embargo, toda clasificación que una ley establezca, pues es muy difícil en una sociedad heterogénea como la nuestra, de intereses disímiles y en ocasiones contradictorios, legislar sin que con ello se afecte directa o incidentalmente un grupo de personas. Por tal razón los tribunales, al interpretar la cláusula de igual protección, han elaborado distintos criterios de análisis constitucional que dependen de la base que se utilice al establecer la clasificación. *Zachry International* v. *Tribunal Superior,* 104 D.P.R. 267, 276 *et seq.* (1975).

Así por ejemplo, las clasificaciones que afectan derechos fundamentales de las personas se han dado en llamar inherentemente sospechosas y requieren de los tribunales un escrutinio particularmente acucioso. Ante éstas clasificaciones la legislación no puede subsistir, a menos que exista algún interés apremiante del Estado que justifique la clasificación y que promueva necesariamente la consecución de ese interés.

Cuando la clasificación no afecta derechos fundamentales, entonces aplica el criterio de análisis racional que permite la clasificación establecida, siempre que ésta no sea arbitraria y exista un vínculo racional entre el propósito de la legislación y la clasificación establecida. [3]

---

[3] Un tercer criterio que han desarrollado las decisiones federales es el del escrutino intermedio, a utilizarse únicamente cuando estén involucradas clasifica-

Para resolver la controversia es indispensable determinar primero cuál criterio de análisis constitucional es el aplicable, *i.e.*, si el de escrutinio estricto o simplemente el de nexo racional.

En la jurisdicción federal prevalece el criterio más laxo pues, a tenor con la cláusula de igual protección, la pobreza no es una clasificación inherentemente sospechosa. *Ortwein*, supra, pág. 660, y *Kras*, supra, pág. 446.

En Puerto Rico forjamos una Carta de Derechos, no en el siglo XVIII, como ocurre con la de Estados Unidos, sino en pleno siglo XX al calor de la Declaración Americana de los Derechos y Deberes del Hombre y de la Declaración Universal de los Derechos del Hombre. Hemos dicho en varias ocasiones que "nuestra Asamblea Constituyente quiso 'formular una Carta de Derechos de factura más ancha que la tradicional, que recogiese el sentir común de culturas diversas sobre nuevas categorías de derechos'". *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250, 258-259 (1978), y *E.L.A.* v. *Hermandad de Empleados*, 104 D.P.R. 436, 439-440 (1975).

Puerto Rico es un país pobre. [4] De acuerdo con el informe social de 1980, preparado por la Junta de Planifi-

---

ciones relativas a sexo o nacimiento. *E.g.*, *Mississippi University for Women* v. *Hogan*, 73 L.Ed.2d 1090 (1982); *Mathews* v. *Lucas*, 427 U.S. 495 (1976).

En Puerto Rico, sin embargo, no es necesario incorporar este criterio intermedio, pues tanto la clasificación por sexo como por nacimiento son inherentemente sospechosas por aparecer en forma expresa en nuestra Carta de Derechos una prohibición de discrimen fundado en tales motivos. *Ocasio* v. *Díaz*, 88 D.P.R. 676 (1963); *Com. de la Mujer* v. *Srio. de Justicia*, 109 D.P.R. 715 (1980); *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267 (1975).

[4] La literatura sobre este problema social nuestro es abundante. Mas véase, por ejemplo, a: C. F. de Cintrón y B. Levine, *¿Quiénes son los pobres en Puerto Rico?* y demás ensayos en la obra *Problemas de desigualdad social en Puerto Rico* (R. Ramírez *et al.* editores), Río Piedras, Eds. Librería Internacional, 1972, pág. 9; las ponencias presentadas en el Seminario sobre el Problema de la Pobreza en Puerto Rico (29 y 30 de abril de 1970) auspiciado por la Escuela de Administración Pública, Vol. IV, Núm. 2, en especial la ponencia de L. F. Negrón García y R. Santos del Valle, *El Derecho y la pobreza: su relación y el rol de los abogados en Puerto Rico*, págs. 117-142; y también a J. Morales Yordán, *Desarrollo Político y Pobreza*, San Juan, Ed. Cordillera, 1971, págs. 17-36.

cación de Puerto Rico, para 1959 el 66.3 por ciento de las familias puertorriqueñas recibían "ingresos inferiores al umbral de pobreza de $2,000 dólares anuales"; diez años más tarde la proporción había disminuido a 60.7 por ciento; y para 1975 a aproximadamente 49 por ciento. Junta de Planificación, *Informe Social*, 1980, pág. 32. A pesar de la constante mejoría de nuestro nivel de pobreza, todavía para 1975 casi la mitad de nuestras familias eran pobres. Para la fecha en que se adoptó nuestra Constitución, la situación era más crítica. Es de suponer que sus forjadores no estaban ajenos a esta circunstancia cuando redactaron y aprobaron la vigente Carta de Derechos.

Surge del Diario de Sesiones de la Convención Constituyente que la Sec. 1 disponía, entre otras cosas, que "no podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen social, ideas políticas o religiosas" y que el delegado señor Padrón Rivera[5] propuso que se intercalara después de "origen" la frase "o condición social". Así se hizo y fue aprobada. Desde entonces las leyes no pueden discriminar por razón de *origen* o *condición social.*

El diálogo entre los delegados señores Fernández Méndez y Benítez —este último presidente de la Comisión sobre la Carta de Derechos— es muy revelador en cuanto a la naturaleza y alcance de esta prohibición. Citamos:

Sr. Fernández [Méndez]:

. . . En la línea 5, ya sabemos que se nsertó la palabra "condición" después de "origen", "origen o condición social". Nosotros hemos leído en la página 6 del Informe de la Carta de Derechos que "origen social", significa que esta expresión reafirma el principio de descartar toda gradación, favoritismo o prejuicio al sopesar los méritos de una causa judicial, de una solicitud en el servicio público, de una subasta, etc.,

---

[5] El señor Lino Padrón Rivera, conocido líder obrero, era el Presidente de la delegación del Partido Socialista en la Convención Constituyente. B. Pagán, *Historia de los partidos políticos puertorriqueños: (1898–1956)*, San Juan, 1959, Vol. II, pág. 308.

por motivo de origen o condición social. Esa es la única explicación que aparece aquí en el informe de la Comisión sobre lo que es origen o condición social y da dos o tres ejemplos de en qué situaciones es que este apartado protegería a alguna persona contra otra persona. Ahora, preguntamos nosotros al Presidente de la Comisión y querríamos que nos informara en qué forma se hace válido, en qué forma se puede proteger ese derecho dentro de la estructura gubernamental que estamos creando con esta constitución, o sea, en qué forma pueda una persona que se sienta agraviada por algún discrimen en este sentido, hacer valer su derecho a que no se discrimine contra ella.

Sr. Benítez: Más adelante, en las líneas quinta, sexta y séptima, se establece que "tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana", y lo que se ha establecido aquí son ciertos principios básicos y esenciales que tienen fuerza *ex proprio vigore*, pero que además de tener fuerza por su propio vigor habrán de requerir implementación [*sic*] de dos clases, educativa y jurídica. En lo que toca a la educativa, ya hay aquí un mandato al sistema de instrucción pública que habrá de respetar estos básicos principios. *En lo que respecta al sistema jurídico y en esto se refiere a la totalidad de la estructura legal del país, se subraya la inconstitucionalidad de todo favoritismo.* Y todo reconocimiento a distinción habrá de estar motivado por mérito, por virtud, por esfuerzo, por talento. En lo que toca a qué es lo que se quiere decir con origen social, quiérese decir con origen social, que no importa la extracción de la persona, *su situación económica,* su condición en la comunidad, todos los puertorriqueños y todas las personas sujetas a las leyes de Puerto Rico son iguales ante nuestras leyes si se aprueba esta disposición y cualquier intento de hacer discrimen en favor o en contra de una de ellas es ilegal. (Énfasis suplido.) 2 *Diario de Sesiones de la Convención Constituyente* 1382 (1952).

En esta ocasión se aprobó una enmienda propuesta por el delegado, señor Trías Monge, a los fines de insertar junto a origen social la frase "posición económica". Según el delegado Trías Monge "[e]sto es, simplemente añadir la única enumeración que falta en la sección correspondiente a ésta

en la Declaración Universal de los Derechos del Hombre. . .".
*Id.* Posteriormente, esta enmienda fue dejada sin efecto a
petición del delegado señor Gutiérrez Franqui.(6) Éste
expresó sus razones como sigue:

Sr. Gutiérrez Franqui: Srta. Presidenta y compañeros
delegados: He solicitado enmienda por eliminación de la sec-
ción 1, de la carta de derechos, en el sentido de eliminar la
frase "posición económica" en la línea 6.

Como recordará la Srta. Presidenta y los compañeros dele-
gados, esta frase se intercaló en la carta de derechos, por
enmienda en segunda lectura. No aparecía en el texto de la
proposición sobre carta de derechos, según fue informada por
la comisión.

Un estudio cuidadoso de los resultados y efectos legales que
podría producir esta frase en el sitio donde está colocada, me
ha llevado a la conclusión de que la misma podría burlar pre-
cisamente el espíritu y la intención con que fue colocada en
esta limitación de poderes.

Si no puede establecerse discrimen alguno por razón de
"posición económica" es cierto que no podrá perjudicarse a
una persona por razón de su posición económica, pero es
dudoso si podría beneficiársele también a base de su débil o
inadecuada posición económica.

Creo que la frase puede poner en peligro programas tan
importantes como [el] del desarrollo de viviendas donde los
fondos públicos se destinan a construir viviendas baratas y los
cánones de arrendamiento se fijan exclusivamente a base de
la posición económica de las personas que van a ocupar esas
casas viviendas. Y establecerle a unos más canon o canon
mayor que a otros por razón de posición económica, o
[imponerle] a otro[s canon] inferior, podría estar en conflicto
con esta disposición constitucional.

Creyendo que en su conjunto, la carta de derechos es sufi-
ciente para dejar establecido que no existirá discrimen de esa
naturaleza en Puerto Rico, aconsejo la eliminación de esta
frase por considerarla peligrosa en el sentido que he indicado.
3 *Diario de Sesiones de la Convención Constituyente* 2244
(1952).

---

(6) El delegado señor Trías Monge no objetó.

La eliminación se debió, pues, a dos razones: (1) que solo así podría beneficiarse al de "débil o inadecuada posición económica", y (2) que aun sin dicha frase "la carta de derechos es suficiente para dejar establecido que no existirá discrimen de esa naturaleza en Puerto Rico".

A base de lo anterior, no puede haber duda en cuanto a que los forjadores de nuestra Constitución creyeron fundamental que no se discriminase contra ninguna persona por razón de su pobreza. Las leyes, de las cuales las Reglas de Procedimiento Civil son parte, deben encarnar este principio de esencial justicia, y cualquier clasificación basada en este criterio debe mirarse con recelo y escrutarse rigurosamente.

Pasemos ahora a considerar cuál es el interés apremiante del Estado en asegurar *a una parte* las costas y honorarios a que eventualmente podría ser condenado su adversario.

La medida, ciertamente, pretende proteger *al demandado* de pleitos frívolos e infundados. Sin embargo, entre el interés en evitar acciones superfluas contra *un demandado* y el interés de *un indigente* en utilizar nuestros tribunales para vindicar derechos que puedan haberle sido infringidos, debe prevalecer este último. En este contexto el requisito de fianza no promueve necesariamente el propósito del estatuto. Existen medios menos onerosos para conseguir el mismo fin. La regla podría proveer, por ejemplo, que antes de exigir la fianza el tribunal pasara juicio sobre la probabilidad de triunfo del demandante y si, en principio, se trata de una reclamación genuina o, por el contrario, viciosa.[7]

Así pues, la Regla 69.5 es inconstitucional en su aplicación a litigantes pobres por violar la cláusula de igual protección de las leyes del Art. II, Sec. 7 de nuestra Constitución.

---

[7] Véase, por ejemplo, cómo la Regla 56.3(2) incorporó un diseño de aseguramiento de sentencia en *forma pauperis*.

## V

El Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, dispone que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". Si el obligado a resarcir el daño rehúsa hacerlo voluntariamente, puede ser compelido a ello por el agraviado mediante la presentación de la correspondiente acción civil ante los tribunales de justicia.

La causa de acción derivada de este artículo pretende que se subsane con dinero cualquier alteración significativa de la integridad física o moral de la persona. Es por esta razón que hemos resuelto que tanto la causa de acción como la indemnización resultante de su ejercicio en corte son de carácter privativo. *Robles Ostolaza* v. *U.P.R.*, 96 D.P.R. 583 (1968).

También hemos decidido que una causa de acción por ejercitar es un ente patrimonial adscrito al caudal relicto de una persona, transmisible con la muerte y sujeta a nuestras leyes de herencia. *Vda. de Delgado* v. *Boston Ins. Co.*, 101 D.P.R. 598 (1973). Citando a Planiol y otros autores, señalamos en este caso que el patrimonio de una persona es el conjunto de derechos y obligaciones pertenecientes a dicha persona, apreciable en dinero. Y de Puig Brutau tomamos la expresión de que el derecho a obtener indemnización por daños y perjuicios es un derecho de crédito (págs. 604-605) y concluimos que este derecho tiene un "incuestionable interés jurídico y económico" (pág. 607).

La calidad de una deuda como bien patrimonial es algo que nadie disputa, aun cuando en casos de responsabilidad extracontractual su exigibilidad es contingente. *Cf. García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951). En Estados Unidos, por ejemplo, una deuda monetaria sirvió, por años, de base para el ejercicio de jurisdicción *in personam* por los estados, *Harris* v. *Balk*, 198 U.S. 215 (1905), y aun cuando su utilidad para estos fines ha desaparecido, *Rush* v. *Savchuk*,

444 U.S. 320 (1980), su naturaleza de bien patrimonial permanece intacta.

Bajo las Enmiendas Quinta y Decimocuarta de la Constitución federal, la privación de propiedad sin notificación u oportunidad de ser oído se ha considerado siempre ajena al debido proceso de ley. *Mullane* v. *Central Hanover Tr. Co.*, 339 U.S. 306 (1950). No importa la clase de propiedad que esté involucrada ni que la incautación sea temporera. *Fuentes* v. *Shevin*, 407 U.S. 67 (1972); *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U.S. 601 (1975). (8) El estatuto puede prevalecer sólo si contiene garantías procesales suficientes para escuchar a la parte afectada antes de que se adjudique definitivamente el derecho involucrado, *Mitchell* v. *W. T. Grant Co.*, 416 U.S. 600 (1974), o si existen circunstancias extraordinarias que lo justifiquen, *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974). Actuaciones *ex parte* de un litigante particular con el propósito o el efecto de privar a otra persona de su propiedad, sin concederle a ésta la oportunidad de ser oída, son contrarias al debido procedimiento de ley y, en ocasiones, fuente de responsabilidad civil. *Lugar* v. *Edmondson Oil Co.*, 73 L.Ed.2d 482 (1982).

En nuestra jurisdicción el interés jurídico y económico de autos está tutelado por aquella cláusula de nuestra Constitución que proscribe la privación de la propiedad sin el debido procedimiento de ley y por la Decimocuarta Enmienda. Art. II, Sec. 7. Cuando el Estado no provee foros ni mecanismos alternos para dilucidar las reclamaciones de sus ciudadanos por los agravios sufridos, la vía judicial es el camino forzado para la reivindicación de los derechos infringidos. En tales circunstancias, hemos declarado reñi-

---

(8) El propio Tribunal Supremo federal ha reiterado en *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U.S. 601, 608 (1975), que:

"We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause. *Fuentes* v. *Shevin*, 407 U.S., at 89–90."

das con nuestra Constitución las limitaciones contenidas en la Ley de Pleitos contra el Estado, en cuanto requerían aprobación del Poder Legislativo para accionar o cobrar al Estado una suma superior a la dispuesta por el estatuto cuando se le demandaba por daños. Entonces dijimos: "Es patente la endeblez de este sistema legal que al repartir el foro de remedio entre Asamblea Legislativa y tribunal de justicia no es capaz de ofrecer un *igual acceso de todo litigante* a los procesos decisionales a que obligatoriamente debe someterse para obtener una adjudicación de su acción civil." (Énfasis nuestro.) *Torres* v. *Castillo Alicea*, 111 D.P.R. 792, 803-804 (1981). Véase al efecto, y en cuanto a los municipios, *Colón* v. *Municipio de Guayama*, 114 D.P.R. 193 (1983).

De la misma manera no puede concebirse la utilidad o la validez de un sistema jurídico que reconoce por un lado el derecho patrimonial que nace de la causa de acción por daños y niega por otro lado el derecho a ejercitarla ante los tribunales de justicia, al no proporcionar a quien reclama ese derecho el debido procedimiento a que se refiere la Sec. 7 del Art. II de nuestra Constitución.

A tenor con esta cláusula de nuestra ley básica, el Estado tiene que proporcionar a todo el que pueda verse privado de su propiedad una notificación adecuada y una oportunidad razonable de ser oído. *Pagán* v. *Registrador*, 62 D.P.R. 594 (1943). Aunque no siempre se requiere que la notificación y audiencia se concedan antes de la privación de la propiedad, es necesario, sin embargo, que se realicen antes de que se produzca una adjudicación definitiva de los derechos involucrados. *Domínguez Talavera* v. *Tribunal Superior*, 102 D.P.R. 423, 428 (1974).

La Regla 69.5 tiene el efecto de privar de su propiedad a un reclamante indigente que no pueda prestar fianza de no residente, toda vez que en dicho caso hace mandatoria la desestimación. Se le privaría del derecho a ejercer su causa de acción que, como hemos dicho, es un derecho patrimonial.

El propósito de la regla es evitar la prosecución de pleitos frívolos e inmeritorios contra los residentes de Puerto Rico. No es una disposición arancelaria a favor del Estado para sufragar el costo que implica operar y administrar los tribunales. Con la aplicación de la Regla 69.5, el beneficio del Estado es mínimo e incidental.

En la Regla 69.5 están ausentes todas las garantías procesales que requiere la cláusula de debido procedimiento en su aspecto procesal (*procedural due process*). De acuerdo con la regla, una vez iniciado el pleito, el demandado puede exigir la prestación de una fianza sin que deba demostrar primero la frivolidad de la reclamación del demandante no residente o, siquiera, que el demandado tiene una probabilidad de prevalecer en los méritos frente a la reclamación del demandante. Tampoco puede el demandante obtener la fijación de una fianza en cuantía inferior a los mil dólares que establece la regla, independientemente de los méritos de su causa de acción o su probabilidad de triunfo. Recuérdese que el texto de la regla no permite que el tribunal exima a un demandante no residente de prestar dicha fianza o que la preste por una suma inferior a mil dólares. *Planned Credit of P.R., Inc.*, supra.

El hecho de que la moción de fianza de no residente se someta a la consideración del juez —lo que a primera vista parecería superar el escollo de inconstitucionalidad, tal y como ocurrió en *Mitchell*, supra— no tiene el efecto requerido por la Constitución. La moción se presenta en el tribunal, no para que el juez en el ejercicio de su discreción judicial evalúe la reclamación del demandante a base del criterio de frivolidad que es norte de la regla, sino para que paralice los procedimientos o, en última instancia, desestime la acción. La única discreción que la regla concede al juez es la de exigir mayor fianza y no lo contrario. Una discreción judicial así de trunca no puede satisfacer las salvaguardas procesales que el debido procedimiento de ley requiere del Estado.

En algunas situaciones una fianza de mil dólares podría ser a todas luces exagerada, en otras, la indigencia del reclamante podría ser crucial en la determinación de la cuantía. Sin embargo, el esquema de la Regla 69.5 impide al juez ejercer de modo compatible con la Constitución su deber ministerial de escuchar a quien acude a su sala en busca de justicia. En nuestro sistema, debe ser el juez y no una parte quien decida sobre la privación del venerado "día en corte" de un litigante, sobre todo si se trata de un litigante indigente.

En California, de donde proviene nuestra Regla 69.5, se ha resuelto que es inconstitucional, por violar la cláusula de debido procedimiento de ley, una disposición similar que requería del demandante no residente que prestara fianza para asegurar las costas en pleitos contra entidades y funcionarios públicos. *Beaudreau* v. *Superior Court of Los Angeles County*, 121 Cal. Rptr. 585; 14 Cal.3d 451; 535 P.2d 713 (1975). El Tribunal Supremo de California *en banc* sostuvo que la regla no proveía audiencia para determinar los méritos de la reclamación del demandante o la necesidad de que se prestara la fianza y el monto de la misma, lo cual está reñido con la referida cláusula constitucional. A igual conclusión es forzoso llegar respecto a nuestra Regla 69.5 de Procedimiento Civil.

## VI

Las Reglas 56.1, 56.2 y 56.3 de Procedimiento Civil disponen:

56.1. *Principios generales*

En todo pleito antes o después de sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria *para asegurar la efectividad de la sentencia.* El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que

estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial.

### 56.2. *Notificación*

No se concederá, modificará, anulará, ni se tomará providencia alguna sobre un remedio provisional, sin notificar a la parte adversa y sin celebrar una vista, excepto según se dispone en las Reglas 56.4 y 56.5.

### 56.3. *Fianza*

Se podrá conceder un remedio provisional sin la prestación de fianza en cualquiera de los siguientes casos:

(1) Si apareciere de documentos públicos o privados, según definidos por ley, firmados ante una persona autorizada para administrar juramento, que la obligación es legalmente exigible; o

(2) Cuando se tratare de un litigante insolvente que estuviere expresamente exceptuado por ley para el pago de aranceles y derechos de radicación y a juicio del tribunal la demanda adujere hechos suficientes para establecer una causa de acción cuya probabilidad de triunfo fuere evidente o pudiere demostrarse, y hubiere motivos fundados para temer, previa vista al efecto, que de no obtenerse inmediatamente dicho remedio provisional, la sentencia que pudiera obtenerse resultaría académica porque no habría bienes sobre los cuales ejecutarla; o

(3) si se gestionare el remedio después de la sentencia.

En caso de que el tribunal conceda el remedio provisional sin la prestación de fianza conforme lo dispuesto en esta regla, podrá excluir en su orden determinados bienes.

En todos los demás casos, el tribunal exigirá la prestación de una fianza suficiente para responder por todos los daños y perjuicios que se causen como consecuencia del aseguramiento. Un demandado o querellado podrá, sin embargo, retener la posesión de bienes muebles embargados por un demandante o reclamante, prestando una fianza por tal suma que el tribunal estime suficiente para responder por el valor de dicha propiedad. El afianzamiento por el demandado de la suma embargada, dejará sin efecto el embargo. (Énfasis suplido.)

Estas disposiciones se refieren a medidas provisionales *para asegurar la efectividad de la sentencia que pueda recaer* en un pleito. La Regla 56.1 es clara en ese sentido. La Regla 56.2 garantiza que esas medidas provisionales no se impongan sin que previamente se notifique y se oiga a la parte adversa. Y la 56.3 establece el requisito de prestación de fianza como medida protectora a la parte contra la cual se ha de disponer algún remedio provisional de los allí expresados. Como excepción, esta Regla 56.3 permite, en su inciso (2), que se exonere del requisito de prestar fianza al litigante insolvente, si se dan las circunstancias allí especificadas.

Este Tribunal, en su per curiam de hoy, aplica estas disposiciones, y en particular el citado inciso (2) de la Regla 56.3, para permitir que se libere a las aquí peticionarias de los rigores de la Regla 69.5, y se les permita litigar sin prestar la fianza de no residente que exige dicha regla. No se deroga la Regla 69.5, que es lo procedente, pero se deja en el cuerpo de Reglas de Procedimiento Civil sin función alguna. Se deja vigente en un limbo de ser y no ser.

Al aplicar este Tribunal las disposiciones de la Regla 56 para eximir del requisito de fianza a un demandante no residente que sea indigente, sin declarar la inconstitucionalidad de la Regla 69.5, se ha derogado, sin decirlo, lo resuelto en *Planned Credit of P.R., Inc.*, antes citado. De hecho, se ha incorporado entre unas medidas provisionales que tienen por propósito proteger al *demandante*, garantizándole la efectividad de la sentencia que pueda obtener (Regla 56), lo relativo a una medida concebida en la protección del *demandado* y que tiene por propósito garantizar a éste las costas en que incurra al defenderse contra la reclamación del demandante no residente (Regla 69.5).

Esto es, a mi juicio, un buen ejemplo de legislación judicial. No concibo que se invoque la norma de abstención para justificar mantener una regla absurda y opresiva como la 69.5, y que se haga uso de una facultad puramente legisla-

tiva para enmendar, por añadidura, la Regla 56. A partir de la per curiam de hoy, la fianza de no residente ha dejado de ser mandatoria para convertirse en una medida a concederse a discreción del tribunal, previa notificación y audiencia al demandante y oportunidad a éste de mostrar que es insolvente y que tiene una causa de acción meritoria.

Acepto el resultado a que se llega, de liberar a las aquí peticionarias del requisito de prestar fianza. Lo acepto porque es justo, pero no debió forzarse la interpretación de la Regla 56 para ello. Bastaría con erradicar de nuestro Derecho, por inconstitucional, la odiosa Regla 69.5.

Por lo demás, la Regla 69.5 queda perpetuada en nuestro ordenamiento procesal civil como una cosa inútil. No se le quiere declarar oficialmente muerta, pero ha dejado de existir. Tuvo su último aliento en la per curiam de hoy, pero no se le da sepultura. Su espíritu se ha ido sin responsos ni rosarios, y su texto se irá carcomiendo entre las otras momias que aún quedan en diferentes códigos y textos de nuestro Derecho. Un día, cuando se revisen y se reescriban las Reglas de Procedimiento Civil, la buscaremos y ya no estará. Se habrá difuminado con su espíritu en su propia inutilidad. A la Regla 69.5 y a su fiel compañero, *Planned Credit of P.R., Inc.*, solo resta decirles, *requiescat in pace*, Amén.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

I

El Preámbulo de nuestra Constitución, en parte, proclama "la fidelidad a los valores del ser humano por encima de posiciones sociales, diferencias raciales e *intereses económicos*; y la esperanza de un mundo mejor basado en estos principios". (Énfasis nuestro.) El Art. II, Sec. 1 de su Carta de Derechos consagra la inviolabilidad de la dignidad del

ser humano, que "[t]odos los hombres son iguales ante la Ley", y que "[n]o podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, *origen o condición social*, ni ideas políticas o religiosas". (Énfasis nuestro.) Estos preceptos persiguen "la igualdad esencial de todas las personas dentro de nuestro sistema constitucional. La igualdad ante la ley queda por encima de accidentes o diferencias, bien tengan su origen en la naturaleza o en la cultura. Todo discrimen o privilegio contrario a esta esencial igualdad repugna al sistema jurídico puertorriqueño. *En cuanto fuera menester nuestra organización legal queda robustecida por la presente disposición constitucional, a la vez que obligada a ensanchar sus disposiciones para dar plena realización a lo aquí dispuesto*". (Énfasis suplido.) Informe de la Comisión de la Carta de Derechos, 4 *Diario de Sesiones de la Convención Constituyente* 2561 (1952).

Nuestro ordenamiento jurídico implanta en diversas zonas ese mandato constitucional en lo que respecta a la condición de pobreza. Obliga a los tribunales a "descartar toda gradación, favoritismo o prejuicio al sopesar los méritos de una causa judicial . . .". *Id.*, pág. 2562. Así, en el área procesal reconoce que la situación de indigencia no es obstáculo para que una persona litigue y reivindique sus derechos en los foros adjudicativos. Véase la Ley Núm. 17 de 11 de marzo de 1915, según subsiguientemente enmendada, 32 L.P.R.A. sec. 1482. Igual orientación siguen las Reglas de Procedimiento Civil de 1979: Regla 25.1, *in fine* (deposición *in forma pauperis*); Regla 27.6 (medidas alternas para la toma de deposiciones), y Regla 56.3, inciso 2 (aseguramiento de sentencia *in forma pauperis*). El marco conceptual expuesto nos ayuda a entender los hechos que dan génesis al recurso, como factores condicionantes de nuestra decisión.

## II

El 16 de marzo de 1973, María del Carmen Pastrana Molina, de 6 años, alegadamente sufrió un accidente al

caerse desde el cuarto piso del Residencial Jardines de Cupey en Río Piedras, donde vivía con su madre como arrendatarias de la Corporación de Renovación Urbana y Vivienda (CRUV). Como resultado sufrió daños consistentes en la fractura del cráneo, contusiones en el cerebro e incapacidad total permanente.

A raíz de lo anterior, su madre, la Sra. Santa Molina, por sí y en representación de María, presentó acción en daños contra la CRUV, y su aseguradora, la Interstate General Corp. Alegó negligencia de las demandadas al no cumplir con los requisitos establecidos en los reglamentos de la Junta de Planificación en el diseño y la construcción de los pasamanos de seguridad.

Subsiguientemente se trasladaron a Boston, Estados Unidos, con el objeto de procurar un tratamiento médico más adecuado.(¹)

En vista de lo anterior, la codemandada Interstate solicitó que se ordenara a las demandantes depositar la fianza de no residente, ascendente a $1,000, conforme la Regla 69.5 de las de Procedimiento Civil de 1979.(²) Las demandantes se opusieron alegando que eran indigentes y que carecían de medios alternos para cumplir con esa disposición. Plantearon que aunque la regla "es válida de su faz" su aplicación sería inconstitucional, pues constituía una

---

(¹) A los efectos de esta decisión, presumiremos que no residen en Puerto Rico, independientemente de la contención de que en un futuro no precisable tengan la intención de regresar a esta jurisdicción.

(²) Reza:

"Cuando el demandante residiere fuera de Puerto Rico o fuere una corporación extranjera, se le requerirá para que preste fianza para garantizar las costas, gastos y honorarios de abogados en que pudiere ser condenado. Todo procedimiento en el pleito se suspenderá hasta que se preste la fianza, que no será menor de mil (1,000) dólares. El tribunal podrá ordenar que se preste fianza adicional si se demostrare que la fianza original no es garantía suficiente, y se suspenderán los procedimientos en el pleito hasta que se hubiere prestado dicha fianza adicional.

"Transcurridos noventa (90) días desde la notificación de la orden del tribunal para la prestación de la fianza o de la fianza adicional, sin que la misma se hubiere prestado, el tribunal ordenará la desestimación del pleito."

violación a la igual protección de las leyes y una privación de un derecho sin el debido procedimiento de ley. Suplicaron del tribunal de instancia, y reproducen ante nos, que "se *mantenga intacta* esta Regla, que de su faz es muy sabia, *pero que la aplique* a la parte demandante acorde con los postulados de nuestra Constitución".

Ante este planteamiento se notificó al Secretario de Justicia, quien compareció oportunamente a sostener su validez. En síntesis, adujo que la clasificación contenida en la Regla 69.5 no es a base de la posición económica, sino de criterios de residencia, por lo cual no podía considerarse sospechosa. Argumentó, además, que el requisito de la fianza para no residente está justificado, ya que sirve de garantía para asegurar que los demandantes no residentes que pierden sus reclamaciones paguen los costos de los pleitos que han ocasionado.

El tribunal de instancia acogió este planteamiento y ordenó a las demandantes prestar la fianza mencionada, so pena de desestimar la demanda. Revisamos mediante el trámite de mostrar causa.

## III

La Regla 69.5 sobre fianza de no residente tiene como propósito "garantizar el pago de las costas, gastos y honorarios de abogado del litigante no residente en caso de que eventualmente no pueda prevalecer y deba ser condenado al pago de éstos". *Práctica Procesal Puertorriqueña*, Vol. II, pág. 405. A su amparo, en *Planned Credit of P.R., Inc.* v. *Page*, 103 D.P.R. 245, 253 (1975), resolvimos que una *corporación* no residente venía obligada a prestarla en virtud de sus "términos mandatorios". *Bram* v. *Gateway Plaza, Inc.*, 103 D.P.R. 716, 717 (1975). Véase, además, *Blatt & Udell* v. *Core Cell*, 110 D.P.R. 142, 146 (1980) (reclamación de sociedad profesional).

Ninguna de esas decisiones planteaba frontalmente un reclamo de inconstitucionalidad en su aplicación a una per-

sona natural por su condición de indigencia. Aunque se puede diferir, es cognocible el interés apremiante del Estado de que los decretos y sentencias judiciales sean eficazmente ejecutables. Requerir como norma general que un reclamante no residente —sea persona natural o jurídica— garantice el pago de las costas, gastos y honorarios de abogado, de no prevalecer, es razonable, adelanta ese objetivo y proyecta un nexo racional suficiente entre ese interés y el requisito de fianza. Per se no es arbitraria. Desalienta, además, la presentación de pleitos frívolos. Coincidimos, sin embargo, en que su imposición mecánica, literal y absoluta conlleva en casos de personas en condición paupérrima un serio problema bajo la cláusula de la igual protección de las leyes, que es menester afrontar.

Ahora bien, en buena metodología adjudicativa debemos tener presente dos principios rectores en materia de interpretación. Primero, que las leyes se presumen válidas. Los tribunales no deben pasar juicio sobre su constitucionalidad, salvo que sea necesario para la solución correcta y justiciera del caso. Según manifestamos en *Esso Standard Oil* v. *A.P.P.R.*, 95 D.P.R. 772, 783–784 (1968), "es necesario recordar los criterios de auto-limitación que deben guiarnos al juzgar la validez constitucional de medidas legislativas. Las relacionamos en *E.L.A.* v. *Aguayo*, 80 D.P.R. 552, 595, 596 (1958). Además, hemos determinado que un estatuto es y se presume constitucional hasta que un tribunal competente declare lo contrario. *Pueblo* v. *Pérez Méndez*, 83 D.P.R. 539, 544 (1961). *A un estatuto debe dársele una interpretación razonable; y una aplicación literal del mismo que resulte en consecuencias absurdas, debe evitarse siempre que se pueda dar a la ley una interpretación razonable consistente con el propósito legislativo*". (Énfasis suplido.)

Por tal razón, inspirados en la doctrina de deferencia del Poder Judicial sobre no declarar inconstitucional un estatuto a menos que sea necesario, exploramos otro rumbo y alternativa. *Vives Vázquez* v. *Tribunal Superior*, 101 D.P.R.

139 (1973); *Mari Bras* v. *Alcaide*, 100 D.P.R. 506 (1972). Y segundo, que las disposiciones de un estatuto o de un cuerpo de reglas procesales se interpretan integral y armoniosamente.

Así, en el pasado, al evaluar el término de 90 días provisto en la Regla 69.5, y no obstante su lenguaje imperativo, hemos resuelto que dicho término no es fatal sino prorrogable, en virtud de la Regla 68.2(2). *Bram*, supra, pág. 718; *A.P.P.R.* v. *Tribunal Superior*, 104 D.P.R. 307, 309 (1975).

## IV

Expuesto el ámbito de revisión judicial, concentrémonos en la Regla 69.5.

De entrada observamos que la *fianza de no residente* goza en esencia de la naturaleza de un aseguramiento provisional y parcial de una sentencia, en lo concerniente a las costas, gastos y honorarios de abogado. El que aplique a personas no residentes no desvirtúa esa característica, sino más bien tiende a justificar su existencia legítima. Surge, además, que aunque el texto aislado de la Regla 69.5 está concebido en términos mandatorios, la Regla 69.6 que le sigue dispensa la prestación de esa fianza (a) al Estado, a funcionarios en su capacidad oficial, a corporaciones públicas o municipales; (b) en casos de divorcio, de relaciones de familia o sobre bienes gananciales; y (c) en reclamaciones de alimentos. Bajo las instancias (b) y (c) se concede discreción al tribunal.

De la interacción de las Reglas 69.5 y 69.6 es razonable concluir que la fianza de no residente no es absoluta e imperativa en todo caso. Hemos visto que existen varias entidades y personas que expresamente están exentas de su aplicación. Si bien es evidente la exclusión del Estado, sus funcionarios, corporaciones públicas o municipales, las restantes excepciones contemplan la posibilidad real de que una de las partes litigantes no sea residente. Aun así no se exige mandatoriamente en consideración al carácter de la causa de acción envuelta.

Establecida la verdadera naturaleza de la Regla 69.5 —aseguramiento provisional y parcial de una sentencia— y sus excepciones, por su paralelismo conceptual y espiritual, advertimos la aplicabilidad de la Regla 56.3(2) antes mencionada que dispensa la prestación de fianza en remedios provisionales:

> Cuando se tratare de un litigante insolvente que estuviere expresamente exceptuado por ley para el pago de aranceles y derechos de radicación y a juicio del tribunal la demanda adujere hechos suficientes para establecer una causa de acción cuya probabilidad de triunfo fuere evidente o pudiere demostrarse, y hubiere motivos fundados para temer, previa vista al efecto, que de no obtenerse inmediatamente dicho remedio provisional, la sentencia que pudiera obtenerse resultaría académica porque no habría bienes sobre los cuales ejecutarla.

Vemos, pues, la analogía entre ambas reglas. Aunque el texto aislado de la Regla 69.5 se refiere a fianza de no residente, básicamente su razón de ser es garantizar al adversario demandado el cobro parcial de una sentencia a su favor (costas, gastos y honorarios de abogado). Iguales conceptos, aunque de manera más *amplia* y para cualesquiera de las partes, reconoce la Regla 56.3. Y esta última exime expresamente al litigante pobre de prestar una fianza a base de la "probabilidad de triunfo".

El análisis que precede refleja que estas disposiciones, al igual que la restantes mencionadas, abren las puertas de los tribunales al litigante pobre. No son irreconciliables, sino armonizables. El concepto de igualdad en la dignidad humana rechaza toda noción en contrario. Por tal razón, nada impide que sostengamos que en la Regla 69.6 debe estimarse comprendida e incluida, como excepción a la Regla 69.5 sobre prestación de fianza de no residente, a aquellos que meritoriamente no pueden prestarla por su condición de estrechez pecuniaria. "En materia de hermenéutica constitucional y ante estatutos que adolecen de inconstitu-

cionalidad por sub-inclusión, se reconoce la facultad de los tribunales de extender los beneficios estatutarios a aquellos grupos o clases excluidos. . . . La regla es consustancial con el principio de que el Poder Judicial —en abono a una deferencia hacia el Poder Legislativo— debe esforzarse por lograr interpretaciones congruentes y compatibles con el mantenimiento de la constitucionalidad de una ley. En su operación, a diferencia de éste, sin embargo, el impedimento constitucional podrá ser salvado, no mediante la interpretación del texto que por sus claros términos no es susceptible de serlo de otra manera, sino por la *extensión* de los beneficios a la clase excluida. El propósito legislativo, que quedaría frustrado con la anulación del estatuto, queda así en vigor y se supera el discrimen. En esta tarea judicial, el criterio rector lo constituye, por tanto, la importancia '[d]el *motivo* legislativo presumido'. . . . En esta misión de averiguar la *mens* legislativa hemos de evitar guiarnos, en lo posible, por una mecánica literal y eludir mirar las palabras o frases con una óptica empañada, estereotipada o de clisé que adjudique a dicho Poder un interés a destiempo discriminatorio y excluyente." *Milán Rodríguez* v. *Muñoz,* 110 D.P.R. 610, 618–619 (1981). (Escolios omitidos.)

## V

El discrimen se subsana si se incluye entre las excepciones a la fianza de no residente la condición de pobreza. De esa manera cumplimos con la obligación "de ensanchar" nuestro sistema jurídico puertorriqueño a tono con la directriz que nos legara la Convención Constituyente. Por los fundamentos expuestos, nos unimos a la opinión del Tribunal que revoca el dictamen del foro de instancia que exigió la prestación de una fianza de no residente sin examinar y proveer en sus méritos dicha alegación.