EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oscar Acosta Rodríguez y Daisy García Andújar<br><br>  Recurridos<br><br>  v.<br><br>Luis Armando Ghigliotti Lagares, por sí y en representación de la Sociedad Legal de Gananciales entre éste y Jane Doe<br><br>  Peticionarios | Certiorari<br><br>2012 TSPR 152<br><br>186 DPR ____ |

Número del Caso: CC-2011-471

Fecha: 15 de octubre de 2012

Tribunal de Apelaciones:

        Región Judicial de Mayagüez, Región IX

Abogado de la Parte Peticionaria:

        Lcdo. Wilmer Rivera Acosta

Abogados de la Parte Recurrida:

        Lcdo. Luis M. Muñiz Pérez
        Lcdo. Luis A. Muñiz Campos

Materia:  Sentencia con Opinión de Conformidad y Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oscar Acosta Rodríguez y
Daisy García Andújar

    Recurridos

      v.

Luis Armando Ghigliotti         CC-2011-0471
Lagares, por sí y en
representación de la
Sociedad Legal de
Gananciales entre éste y
Jane Doe

    Peticionarios


SENTENCIA

En San Juan, Puerto Rico, a 15 de octubre de 2012.

Atendida la petición de *certiorari*, se expide el auto. Asimismo, confirmamos el dictamen emitido por el Tribunal de Apelaciones.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una Opinión de conformidad, a la cual se unieron el Juez Presidente señor Hernández Denton y los Jueces Asociados señores Kolthoff Caraballo y Estrella Martínez. El Juez Asociado señor Rivera García emitió una opinión disidente, a la cual se unieron las Juezas Asociadas señoras Fiol Matta y Pabón Charneco y el Juez Asociado señor Feliberti Cintrón.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oscar Acosta Rodríguez y Daisy
García Andújar

     Recurridos

     v.

Luis Armando Ghigliotti Lagares,       CC-2011-0471
por sí y en representación de la
Sociedad Legal de Gananciales
entre éste y Jane Doe

     Peticionarios


Opinión de Conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES, a la cual se unieron el Juez Presidente señor HERNÁNDEZ DENTON y los Jueces Asociados señores KOLTHOFF CARABALLO y ESTRELLA MARTÍNEZ.


En San Juan, Puerto Rico, a 15 de octubre de 2012.

¿Es necesaria la prestación de fianza para apelar una orden de desahucio en los casos en que se le reconoce al demandado un crédito por mejoras realizadas a la propiedad en controversia? Luego de evaluar el asunto detenidamente, opino que la ley no crea excepción para no prestarla ante un escenario como este. Por ello, procede su prestación.

I

Los hechos que dan base a esta controversia son relativamente sencillos. El Sr. Oscar Acosta Rodríguez se dedica a la venta de equipo agrícola y arrendamiento de locales comerciales. Según surge

de las determinaciones de hechos del foro primario, en noviembre de 1997 el Sr. Luis Armando Ghigliotti Lagares, contratista de profesión, comenzó a utilizar la parte posterior del negocio del señor Acosta Rodríguez como almacén para su equipo. El señor Acosta Rodríguez nunca cobró al señor Ghigliotti Lagares un canon de arrendamiento por utilizar esa área. Tras utilizarla por casi dos años, a mediados de 1999 el señor Acosta Rodríguez requirió al señor Ghigliotti Lagares que abandonara el lugar pues construiría allí un taller. Sin embargo, le ofreció como opción un predio de terreno que tenía frente a su negocio. Le indicó que de querer utilizarlo, debían otorgar un contrato y establecer un canon de arrendamiento. El señor Ghigliotti Lagares aceptó la oferta y se mudó al nuevo local. Antes de otorgarse el contrato, en diciembre de 1999, niveló el terreno e instaló una verja de alambre eslabonado a su alrededor.

Posteriormente, en enero de 2000 las partes intentaron suscribir un contrato de arrendamiento, pero no se consumó porque el señor Ghigliotti Lagares estaba inconforme con algunos de sus términos. A pesar de que el contrato no se otorgó, las partes llegaron a unos acuerdos con relación al canon de arrendamiento e incluso en febrero de 2000, el señor Ghigliotti Lagares pagó al señor Acosta Rodríguez las mensualidades de enero y febrero de ese año, más un mes adicional de depósito.

El 18 de abril de 2000 las partes otorgaron el contrato. En él se pactó que el arrendatario no podría

efectuar mejoras al terreno en cuestión, a menos que obtuviera permiso previo y por escrito del arrendador. Asimismo, se acordó que de realizar mejoras de carácter permanente sin el permiso correspondiente, estas quedarían a beneficio del arrendador, quien no tendría que pagar valor alguno por ellas.

El señor Ghigliotti Lagares pagó el canon de arrendamiento ininterrumpidamente, durante más de siete años. No obstante, en noviembre de 2007 dejó de hacerlo. Entonces, el 18 de diciembre de 2008 el señor Acosta Rodríguez presentó una demanda de desahucio en contra del señor Ghigliotti Lagares. Oportunamente, este último contestó la demanda y reconvino. En su comparecencia, no evidenció haber hecho pago alguno respecto a los cánones de arrendamiento atrasados. A su vez, adujo que conforme al Art. 297 del Código Civil, 31 L.P.R.A. sec. 4070, podía retener la propiedad hasta que se le indemnizaran las mejoras realizadas al local comercial antes de que las partes otorgaran el contrato.

Durante el trámite del caso ante el foro primario, el señor Ghigliotti Lagares solicitó que el proceso de desahucio se tramitara por la vía ordinaria. Para ello arguyó que existía un conflicto de título. Se fundamentó en nuestros pronunciamientos en C.R.U.V. v. Román, 100 D.P.R. 318 (1971). Tras varios trámites procesales, el juicio comenzó. En la primera vista, el tribunal declaró sin lugar una moción de sentencia sumaria que presentó el señor

Acosta Rodríguez y aclaró que el trámite del caso varió, por lo que se llevaría por la vía ordinaria.

Tras evaluar el testimonio de las partes, el foro primario emitió sentencia en la que condenó al señor Ghigliotti Lagares a desalojar la propiedad arrendada. Asimismo, le ordenó pagar $11,275 por cánones de arrendamiento atrasados y $3,000 en honorarios de abogado. Por su parte, el foro primario concluyó que el señor Ghigliotti Lagares tenía derecho a una indemnización de $6,077.95 por las mejoras realizadas a la propiedad antes de la otorgación del contrato. En la sentencia, el foro primario no reconoció directamente al señor Ghigliotti Lagares como un constructor de buena fe.

Finalmente, el Tribunal de Primera Instancia advirtió al señor Ghigliotti Lagares que si deseaba apelar la sentencia, tendría que prestar una fianza como dispone el Art. 631 del Código de Enjuiciamiento Civil, 32 L.P.R.A sec. 2832.

Inconforme con esa determinación, el señor Ghigliotti Lagares apeló y presentó una moción en auxilio de jurisdicción ante el Tribunal de Apelaciones. En esencia, arguyó que no le correspondía prestar fianza para apelar, pues durante el juicio el tribunal varió el trámite del caso de un desahucio sumario a un pleito ordinario. Discutió, además, que el Art. 631 del Código de Enjuiciamiento Civil, supra, "forma parte del andamiaje procesal del procedimiento de desahucio sumario que el Tribunal expresa y reiteradamente dispuso que no aplicaba

al caso". Apéndice, pág. 25. Añadió que en la sentencia se le reconocieron derechos como constructor en suelo ajeno, por lo que en virtud del Art. 297 del Código Civil, supra, tenía derecho a retener el terreno hasta que se le indemnizara lo invertido.

El señor Ghigliotti Lagares imputó al Tribunal de Primera Instancia errar al no reconocerlo como un constructor de buena fe con derecho a ser indemnizado conforme dispone el Art. 297 del Código Civil, supra, y al no ordenarle al señor Acosta Rodríguez escoger entre uno de los remedios dispuestos en ese artículo previo a desahuciarlo. Asimismo, arguyó que el foro primario erró al no permitirle presentar prueba sobre el costo de reproducción, menos depreciación, según la etapa de construcción en que se encontraban las obras que había realizado para diciembre de 1999. Finalmente, razonó que al haberse tramitado el caso por la vía ordinaria, el foro primario se equivocó al ordenarle otorgar fianza o consignar los cánones de arrendamiento como requisito para apelar.

El foro apelativo intermedio declaró no ha lugar ambos recursos por falta de jurisdicción. En esencia, el Tribunal de Apelaciones concluyó que un

> examen de las disposiciones del artículo 631, supra, y nuestra jurisprudencia, no hace distinción alguna en cuanto a que el requisito de fianza sea por razón de que el pleito sea tramitado de forma ordinaria. La razón para ello consiste en que el requisito de fianza, en estos casos, no existe para garantizar únicamente los pagos adeudados sino también los daños resultantes de mantener congelado el libre uso de

la propiedad afectada mientras se dilucida la apelación. Crespo Quiñones v. Santiago Velázquez, *supra*. En su consecuencia, este foro apelativo carece de jurisdicción para entender en los méritos del recurso ante nuestra consideración, por lo que procede la desestimación del recurso.

Insatisfecho una vez más, el señor Ghigliotti Lagares presentó ante este Tribunal una moción en auxilio de jurisdicción acompañada de una petición de certiorari. Evaluada la moción en auxilio de jurisdicción, la declaramos con lugar y paralizamos los efectos de las sentencias dictadas por los foros inferiores. De igual forma, concedimos diez días al señor Acosta Rodríguez para que mostrara causa por la cual no debíamos expedir un auto de certiorari y revocar la sentencia del Tribunal de Apelaciones. En cumplimiento con nuestra orden, el señor Acosta Rodríguez compareció.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II

A. El desahucio es un procedimiento especial de naturaleza sumaria cuya finalidad es recuperar la posesión de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detente. Mora Dev. Corp v. Sandín, 118 D.P.R. 733 (1987). Se trata de "uno de los procedimientos más utilizados en nuestro país para reivindicar, mediante trámite y juicio sumario, la posesión y el disfrute de un inmueble". Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 234-235 (1992).

El Código de Enjuiciamiento Civil es el cuerpo legal que articula las normas vigentes sobre esta acción. 32 L.P.R.A. 2821, *et seq*. Con relación al proceso de apelación de un desahucio, la Ley de Desahucio contiene un procedimiento especial. Específicamente, el Art. 631 del Código de Enjuiciamiento Civil, <u>supra</u>, estatuye que

> [n]o se admitirá al demandado el recurso de apelación si no otorga fianza, por el monto que sea fijado por el tribunal, para responder de los daños y perjuicios que pueda ocasionar al demandante y de las costas de apelación; pudiendo el demandado, cuando el desahucio se funde en falta de pago de las cantidades convenidas, a su elección, otorgar dicha fianza o consignar en Secretaría el importe del precio de la deuda hasta la fecha de la sentencia.

En <u>Crespo Quiñones v. Santiago Velázquez</u>, 176 D.P.R. 408, 415 (2009), señalamos que este requisito

> **es jurisdiccional en todo tipo de pleito de** desahucio, aun si no se funda en falta de pago. <u>Blanes v. Valldejuli</u>, 73 D.P.R. 2, 5 (1952). **La razón es obvia: la fianza no existe para garantizar únicamente los pagos adeudados, sino también los daños resultantes de mantener congelado el libre uso de la propiedad afectada mientras se dilucida la apelación.** (Énfasis nuestro.)

Como podemos observar, contrario a los requisitos para apelar en otros procesos, la apelación de un desahucio requiere como requisito jurisdiccional la prestación de fianza o la consignación del importe del precio de la deuda hasta la fecha de la sentencia. Acorde con el Art. 629 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2831, esa fianza debe otorgarse dentro del término de treinta días que se tiene para apelar. "Por lo tanto, si el demandado no presta la referida fianza ni consigna los cánones adeudados

cuando el desahucio se funde en la falta de pago, **el Tribunal de Apelaciones no adquiere jurisdicción para atender el recurso de apelación**". (Énfasis nuestro.) Crespo Quiñones v. Santiago Velázquez, supra, pág. 414.

Un análisis del Art. 631 del Código de Enjuiciamiento Civil, supra, revela sin ambages que el legislador no hizo diferencia entre tipos de desahucio a la hora de requerir fianza. Del legislador entender que la prestación de fianza admitía excepción, así lo hubiese plasmado. Es norma reiterada que "[a]l interpretar un estatuto, la intención legislativa debe ser buscada en el lenguaje usado en él con la ayuda que permiten las reglas de hermenéutica legal. *Pero un lenguaje nuevo o una disposición enteramente nueva no se puede leer en el estatuto para darle un significado que no está incluido en él*". Alonso García v. S.L.G., 155 D.P.R. 91, 108 (2001). Véanse, además, Guzmán v. Calderón, 164 D.P.R. 220, 257-258 (2005) (Op. de Conformidad del Juez Asociado señor RIVERA PÉREZ, a la cual se le unieron los jueces asociados señores REBOLLO LÓPEZ y CORRADA DEL RÍO); Meléndez v. Tribunal Superior, 90 D.P.R. 656, 662 (1964)." (Énfasis nuestro.) Véase, además, Bernier & Cuevas Segarra, op cit., pág. 311.

Sabido es que "[l]a jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias". S.L.G. Solá Maldonado v. Bengoa Becerra, 182 D.P.R. 675, 682 (2011). Véase, además, Asoc. Punta las Marías v. A.R.Pe., 170 D.P.R. 253, 263 esc. 3 (2007). Por ello, la ausencia de jurisdicción

trae consigo las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste abrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. Íd.

Véanse, además, González v. Mayagüez Resort & Casino, 176 D.P.R. 848, 855 (2009); Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314, 326 (1997).

Así, cuando un tribunal determina que no tiene jurisdicción, "está obligado a desestimar el caso". Íd. Su ausencia es insubsanable. Íd., pág. 683.

A través de los años hemos sido enfáticos en cuanto al requisito jurisdiccional estatuido en el Art. 631 del Código de Enjuiciamiento Civil, supra. Únicamente accedimos a eximir a una parte demandada de esa exigencia estatutaria en Bucaré Management v. Arriaga García, 125 D.P.R. 153 (1990). En ese caso resolvimos que un demandado cuya probada insolvencia económica ha sido reconocida por el tribunal conforme con la Ley Núm. 6 de 26 de junio de 1980, está exonerado de otorgar fianza o consignar el importe del precio de la deuda hasta la fecha de la sentencia como condición previa para poder instar un recurso de revisión en una acción de desahucio.[1] Nuestro proceder en ese

---

[1] La Ley Núm. 6 de 26 de junio de 1980 enmendó los Arts. 623 y 635 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2824 y 2836, con el propósito de que se notificara a los Secretarios del Departamento de la Vivienda y del entonces Departamento de Servicios Sociales, hoy Departamento de la

entonces tuvo un fin legítimo. Entendimos que con esa excepción "le impartimos un sentido lógico al procedimiento y le damos vigencia real a la intención legislativa que plasma la política pública de reconocerle un interés particular y otorgarle derechos distintos a los indigentes que están sujetos a una acción de desahucio". Íd., pág. 154. Fundamentándonos en nuestros pronunciamientos en Molina v. C.R.U.V., 114 D.P.R. 295 (1983), concluimos que en un pleito de desahucio el requisito de prestación de fianza o consignación de cánones adeudados impone al demandado insolvente una condición imposible de cumplir. Íd., pág. 158. A parte de esa instancia, hasta el día de hoy, no hemos reconocido una excepción adicional al requisito de prestación de fianza o consignación de cánones adeudados para apelar una sentencia de desahucio.

B. El 9 de marzo de 1905 nuestra Asamblea Legislativa promulgó la "Ley Estableciendo el Procedimiento para el Desahucio y Fijando Reglas para Apelaciones en esta Clase de Juicios". Esa ley es "una copia virtual de los artículos 1559 y siguientes del Código de Enjuiciamiento Civil Español". Más et al. v. Borinquen Sugar Co., 18 D.P.R. 304, 314 (1912). Por consiguiente, ello "trae consigo la presunción de que nuestra Legislatura tuvo la intención de

_____

Familia, toda acción y sentencia que ordenara el desahucio de una familia de insolvencia económica. Asimismo, estatuyó que no se puede ordenar el lanzamiento de ninguna familia a menos que esté presente un funcionario del entonces Departamento de Servicios Sociales. Estos artículos fueron posteriormente enmendados por la Ley Núm. 197-1998. En esencia, esta ley sustituyó "Departamento de Servicios Sociales" por "Departamento de la Familia" y "Ley de Enjuiciamiento Civil" por "Reglas de Procedimiento Civil".

adoptar dicha ley con la interpretación que le ha dado el Tribunal Supremo de España". Íd. Como siempre, tendremos presente que "[c]uando una de nuestras instituciones derive de determinada tradición jurídica, los precedentes de ésta tendrán valor persuasivo en esta jurisdicción, sin olvido de desarrollos valiosos en otros sistemas, aunque sujeto siempre a las realidades específicas de nuestro medio". Pueblo v. Rivera Cintrón, Op. de 19 de abril de 2012, 2012 T.S.P.R. 75, 2012 J.T.S. 88, 185 D.P.R. __ (2012), citando a Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 588 (1983). Véase, además, R. E. Bernier y J. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed. Rev., San Juan, Publicaciones J.T.S., 1987, pág. 451. Así pues, veamos el análisis que los tratadistas españoles han dado al requisito de prestación de fianza o consignación para apelar en casos de desahucio.

Manresa comenta que la Ley de Enjuiciamiento Civil española de 1855 tenía el defecto de que cuando la demanda se fundaba en cualquier otra causa que no fuera el cumplimiento del término estipulado en el contrato, aunque fuese la de falta de pago, el juez tenía que convocar a las partes a un juicio verbal. En él, regularmente la parte contra quien se solicitaba el desahucio no convenía en los hechos para que se tuviera que desviar el proceso a la vía ordinaria.

Explica Manresa que

[b]ien pronto comprendieron los inquilinos y arrendatarios de mala fe que esa disposición de la ley les facilitaba el medio de seguir ocupando

la finca por muchos meses y aun por años, utilizándose de ella sin pagar la renta al propietario, puesto que con sólo negar los hechos en que se fundaba la demanda, ó no conformarse con ellos, se convertía el juicio en pleito ordinario y no podían ser lanzados mientras no recayese sentencia firme. En este punto quedó tan desamparado el derecho de los propietarios como lo estaba anteriormente, y para poner á ese mal el remedio que reclamaba la opinión pública y era de justicia, se promulgó la ley de 25 de Junio de 1867. Por ella se reformaron los arts. 638, 639, 640, 662, 663, 667, 669 y 672 de la ley de Enjuiciamiento [de 1855], ampliando y determinando las causas que dan lugar al desahucio, y ordenando un procedimiento breve y sencillo con términos improrrogables para el caso en que el demandado no conviniera en los hechos; **y para cortar de raíz el abuso antes indicado, se ordenó que no se admitiera al demandado el recurso de apelación, ni el de casación en su caso, si no acreditaba al interponerlo haber satisfecho los plazos vencidos y los que debiera pagar adelantados, según el contrato de arriendo.** (Énfasis nuestro.) J. M. Manresa y Navarro, <u>Comentarios a la Ley de Enjuiciamiento Civil reformada</u>, 3ra. ed., Madrid, España, Imprenta de la Revista de Legislación, 1910, Tomo VI, pág. 6.

La jurisprudencia española ha establecido tres puntos fundamentales tras el requisito para apelar. Estos son:

1. El pago o consignación de las rentas vencidas previo a la interposición del recurso y necesario para la sustanciación del mismo no constituye un mero requisito formal, sino una exigencia esencial para el acceso y la sustanciación de los recursos. Su finalidad es la de asegurar los intereses del arrendador que ha obtenido una sentencia favorable y evitar que el arrendatario se valga del recurso para dejar de satisfacer la renta durante la tramitación del mismo -es decir, evitar que instrumentalice el proceso como una maniobra dilatoria.

2. Tal requisito, aunque permite una interpretación automática y rigurosa que lleve a considerar inescindible la exigencia del pago o consignación de las rentas y la simple acreditación, debe, sin embargo, interpretarse de manera finalista o teleológica, de modo que no convierta en obstáculo insalvable el incumplimiento involuntario y no malicioso de requisitos formales.

3. La repetida interpretación teleológica obliga a distinguir entre el hecho del pago o consignación, que asegura los intereses del arrendador, y la

acreditación de ese pago o consignación, que constituye un simple requisito cuyos eventuales defectos son susceptibles de subsanación. <u>Comentarios al Código Civil y Compilaciones Forales</u>, Tomo XX, Vol. 1.°-B, 3ra ed., Revista de Der. Privado, EDERSA, (1997) pág. 1311. Véanse, además, Sentencia del Tribunal Constitucional de España 131/1993; Sentencia del Tribunal Constitucional de España 87/199; Sentencia del Tribunal Constitucional de España 115/1992; Sentencia del Tribunal Constitucional de España 104/1984; Sentencia del Tribunal Constitucional de España 51/1992.

Por su parte, Julio J. Tasende Calvo comenta sobre el recurso de apelación en la Ley de Enjuiciamiento Civil española de 2000,[2] que

[l]a acreditación del pago de las rentas para recurrir en los procesos arrendaticios (Art.449.1 LECiv)[3]... **que se aplica tanto al recurso**

---

[2] Ley Núm. 1 de 7 de enero de 2000 (RCL 2000, 34, 962 y RCL 2001, 1892).

[3] Art. 449. Derecho a recurrir en casos especiales

"1. En los procesos que lleven aparejado el lanzamiento, no se admitirán al demandado los recursos de apelación, extraordinario por infracción procesal o casación si, al interponerlos, no manifiesta, acreditándolo por escrito, tener satisfechas las rentas vencidas y las que con arreglo al contrato deba pagar adelantadas.

2. Los recursos de apelación, extraordinario por infracción procesal o casación, a que se refiere el apartado anterior, se declararán desiertos, cualquiera que sea el estado en que se hallen, si durante la sustanciación de los mismos el demandado recurrente dejare de pagar los plazos que venzan o los que deba adelantar. El arrendatario podrá adelantar o consignar el pago de varios períodos no vencidos, los cuales se sujetarán a liquidación una vez firme la sentencia. En todo caso, el abono de dichos importes no se considerará novación del contrato.

..."

Este artículo fue modificado por el Art. 4.8 de la Ley Núm. 37 de 10 de octubre de 2011 (RCL\2011\1846). Los párrafos citados no sufrieron cambios con la modificación.

**ordinario de apelación como a los extraordinarios por infracción procesal o casación**, no afecta en realidad a todos los procesos arrendaticios, sino solamente a aquellos en los cuales la sentencia estimatoria lleva aparejado el lanzamiento del arrendatario demandando, siendo, en consecuencia, de aplicación en todos los casos en los que se ejercite la acción resolutoria del contrato, con independencia de que la causa invocada sea o no la falta de pago de la renta.(Énfasis nuestro.) J.J. Tasende Calvo, Algunas cuestiones sobre el recurso de apelación en la Ley de Enjuiciamiento Civil de 2000 (RCL 2000, 34 y RCL 2001, 1892), Actualidad Jurídica Aranzadi Núm. 529, Editorial Aranzadi, SA, Pamplona, España, 2002.

Añade que, "por el contrario, no será necesaria la prestación de fianza cuando el objeto del proceso sea simplemente la reclamación de las rentas adeudadas o la determinación de su importe". Íd.

En el caso ante nuestra consideración, el peticionario, como subterfugio para no pagar fianza, arguye que al ser reconocido con derecho a una indemnización por las mejoras realizadas a la propiedad inmueble, tiene un derecho de retención que lo exime del requisito estatuido en el Art. 631 del Código de Enjuiciamiento Civil, supra. Aduce que resulta un absurdo jurídico que si a una persona se le reconoce un derecho a retener una cosa, luego por una disposición procesal se le requiera la prestación de una fianza para responder de los daños que ocasione retener la propiedad mientras apela. Petición de certiorari, pág. 16. Bajo esa premisa, concluye que la disposición del Art. 631 del Código de Enjuiciamiento Civil, supra, tiene perfecto sentido para los precaristas demandados que no tienen título o justificación alguna para retener la cosa mientras apelan la sentencia. Entiende que no tiene lógica jurídica

alguna que se le condicione su apelación al cumplimiento de unos requisitos cuya razón de ser son contrarios a su derecho de retención.

No tiene razón. "La obligación pues, de acreditar tener satisfechas las rentas vencidas y las que deba pagar adelantadas, para que sea admisible el recurso de apelación... se impone tan sólo al que sea demandado en concepto de arrendatario ó inquilino, y se ha de cumplir cualquiera que sea la causa del desahucio...". Manresa y Navarro, op cit., pág. 29. Por eso,

> [c]uando el desahucio se dirija contra el administrador, encargado, guarda ó portero de la finca, ó contra el que la tenga en precario, como la ley da por supuesto que ninguno de éstos paga renta ó merced, sería absurdo exigirles lo que en el [Art. 631 del Código de Enjuiciamiento Civil, supra] se previene. Íd.

A igual conclusión llega José Alfredo Caballero Gea, al exponer que

> el Tribunal Supremo [español] ha declarado con reiteración que el precepto es de tal modo taxativo que **la falta de este presupuesto es causa de nulidad de la admisión del recurso,** nulidad que puede ser declarada de oficio; **pero que no es aplicable a los desahucios en precario, pues la referida obligación no puede existir cuando la demanda se dirija contra quienes no estén ligados con el actor por ningún título arrendaticio. No existiendo renta resultaría absurdo exigir en ningún momento al demandado que acreditase su pago o que la consignara.** (Énfasis nuestro.) J.A. Caballero Gea, El Desahucio por precario: problemática judicial, Editorial Aranzadi, Pamplona, España, 1983, pág. 300.

En este caso, el señor Ghigliotti Lagares tenía un título de arrendamiento que lo relacionaba con el señor Acosta Rodríguez. En la sentencia del foro primario se determinó que ese contrato estaba vencido y que el

arrendatario no pagaba la renta convenida. Al apelar esa decisión, el señor Ghigliotti Lagares cuestiona su desahucio por virtud del supuesto derecho de retención que alegó que le favorecía y el cambio del trámite a la vía ordinaria. La doctrina revela que los requisitos que impone la ley para apelar en los casos de desahucio no hace distinción a si el trámite se llevó a cabo por la vía ordinaria o extraordinaria. Es decir, la prestación de fianza procede siempre que lleve "aparejado el lanzamiento del arrendatario demandado, siendo, en consecuencia, de aplicación en todos los casos en los que se ejercite la acción resolutoria del contrato, con independencia de que la causa invocada sea o no la falta de pago de la renta". Tasende Calvo, op cit. Distinto sería si el demandado solo reclamara la indemnización que aduce que le corresponde. En esa situación, según la glosa citada, no procedería el pago de fianza pues el objeto del proceso sería simplemente la reclamación de un importe.

Según se desprende del Art. 631 del Código de Enjuiciamiento Civil, supra, el requisito de prestación de fianza no admite excepción más allá que la indigencia. Crespo Quiñones v. Santiago Velázquez, supra, pág. 415. Con la propuesta que hace el peticionario, **el tribunal apelativo tendría que dilucidar los méritos de cada caso para auscultar si procede o no la prestación de fianza.** Adviértase que en su sentencia el Tribunal de Primera Instancia **no reconoció directamente al señor Ghigliotti Lagares como un constructor de buena fe con derecho a**

**retención.** Precisamente, ese es uno de los errores que este plantea ante el foro apelativo intermedio. Entiendo que el propósito que motivó la imposición de una fianza para apelar no permite que la alegación de un alegado derecho de retención por razón de mejoras hechas al terreno se exima a un demandado en un caso de desahucio de su obligación de prestar una fianza. Un vistazo al Art. 637 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2830, revela que

> **[n]o será un obstáculo para el lanzamiento el que el inquilino reclame como suyos labores, plantíos o cualquiera otra cosa que no se pueda separar del inmueble;** pero, cuando mediare contrato oral o escrito de aparcería agrícola y éste se alegare y probare dentro del juicio, no se procederá en ningún caso al lanzamiento sin que medie una tasación y el pago de los sembrados o plantíos pendientes de recolección, debiendo justipreciarse y compensarse éstos, de acuerdo con el dictamen de un tasador, que nombrará el juez del tribunal que tenga jurisdicción en el asunto. Si las partes así lo desearen, nombrará cada una su perito tasador quienes deberán rendir informe en un término de cinco (5) días, el cual una vez aprobado por el tribunal, servirá de base para efectuar la compensación.

Aunque ese artículo no va dirigido al requisito de prestación de fianza o consignación, de él se desprende la intención legislativa de prohibir que un demandando en un caso de desahucio arguya que no procede su lanzamiento por poseer en el inmueble, entre otras cosas, algo que no se puede separar de él. Al interpretar este artículo, la casuística española ha expresado que la realización de mejoras en un inmueble

> no puede determinar la inviabilidad del ejercicio de la acción de desahucio, en cuanto en las específicas normas de ejecución de la sentencia estimatoria de dicha acción la Ley Procesal prevé tal eventualidad, estableciendo un trámite para

salvaguardar los derechos del desahucio. Así, el artículo 1600 [Art. 638 del Código de Enjuiciamiento Civil nuestro] proclama con rotundidad que "no será obstáculo para el lanzamiento que el inquilino o colono reclame como de su propiedad labores, plantíos o cualquier otra cosa que no se pueda separar de la finca". Sentencia Núm. 163/1996 de 11 de junio (AC/1996/1221).

Similares expresiones ha hecho Manresa al explicar el propósito del Art. 1600 del Código de Enjuiciamiento Civil español [Art. 638 nuestro]. En particular ha declarado que ese artículo sirve para que cuando dentro del término señalado un inquilino no haya desalojado un inmueble, se proceda a lanzarlo, "*sin prórroga* ni consideración de ningún género y á su costa, y sin que sirva de obstáculo la reclamación de labores, plantíos, obras, ó cualquier otra cosa que no se pueda separar de la finca, y que el desahuciado pretenda ser de su propiedad, ó que deben abonársele". Manresa y Navarro, op cit., pág. 55.

De lo anterior se colige que el legislador previó en la ley especial de desahucio que un demandado pudiese traer como argumento un supuesto derecho de retención por mejoras u otras cosas realizadas en el terreno. Claramente, el Art. 637 del Código de Enjuiciamiento Civil, supra, cerró esa posibilidad. Si no se pueden oponer mejoras realizadas al terreno para impedir el lanzamiento, mucho menos se pueden invocar para eximir del pago de fianza en apelación. Aplica el principio de hermenéutica de que los tribunales debemos "armonizar hasta donde sea posible todas las disposiciones de ley envueltas en el caso con miras a lograr un resultado

sensato, lógico y razonable que represente la intención del legislador". Bernier & Cuevas Segarra, op cit., pág. 245.

Un examen del recurso ante nuestra consideración revela que el señor Ghigliotti Lagares no prestó fianza en apelación contra la sentencia que ordenó su desahucio, ni consignó el monto de la deuda por los cánones de arrendamiento no pagados al señor Acosta Rodríguez. Ante el incumplimiento con el requisito jurisdiccional de prestación de fianza, el foro apelativo intermedio solo tenía poder para declararse sin jurisdicción y desestimar el recurso. Caratini v. Collazo Syst. Analysis, Inc., 158 D.P.R. 345 (2003). Es decir, no podía, como sugiere implícitamente el peticionario, entrar a dilucidar los méritos de la controversia para auscultar si tenía jurisdicción. En todos los casos que hemos tenido controversias relacionadas a nuestra jurisdicción, como primer paso en la metodología de análisis auscultamos si tenemos jurisdicción antes de entrar en los méritos de la controversia. A manera de ejemplo, véanse, Lozada Sánchez v. J.C.A., Op. de 21 de marzo de 2012, 2012 T.S.P.R. 50; 2012 J.T.S. 63, 184 D.P.R. 2012 __ (2012); Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920, 936 (2011); González v. Mayagüez Resort & Casino, 176 D.P.R. 848, 856 (2009); Esquilín v. Alcalde Mun. de Carolina, 150 D.P.R. 204, 207 (2000); Torres v. Toledo, 152 D.P.R. 843, 852 (2000)(Sentencia); Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314, 326 (1997); González Santos v. Bourns P.R., Inc., 125 D.P.R. 48, 63 (1989).

En síntesis, consentir a la propuesta del peticionario significaría retroceder más de un siglo y obviar el texto del Código de Enjuiciamiento Civil español, pieza legislativa que adoptamos con su interpretación. Peor aún, ocasionaría que tengamos ante nuestros tribunales múltiples planteamientos para obviar el requisito de prestación de fianza y frustraría las múltiples enmiendas que la Asamblea Legislativa le ha hecho a la Ley de Desahucios para agilizar su trámite. Así, es improcedente el argumento del peticionario de que ostenta un derecho de retención sobre el inmueble en cuestión que le exime de prestar fianza para apelar.

Por todo lo anterior, estoy conforme con la Sentencia del Tribunal.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oscar Acosta Rodríguez y
Daisy García Andujar
            Recurridos

v.

Luis Armando Ghigliotti
Lagares, por sí y en
representación de la
Sociedad Legal de
Gananciales entre éste y
Jane Doe
            Peticionarios

Certiorari

CC-2011-0471

Opinión Disidente emitida por el Juez Asociado señor RIVERA GARCÍA, a la cual se unieron las Juezas Asociadas señora FIOL MATTA y señora PABÓN CHARNECO, y el Juez Asociado señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 15 de octubre de 2012.

Con la decisión que se emite hoy, este Tribunal ignora uno de los más fundamentales preceptos reconocidos en nuestro Código Civil: el derecho de retención.

Al resolver que el requisito de prestación de fianza es uno jurisdiccional que no admite excepción, independientemente de que al demandado le haya sido reconocido un crédito mediante sentencia por haber realizado unas mejoras necesarias e indispensables, la mayoría adopta una visión sumamente textualista que me veo imposibilitado de avalar.

Por entender que la acción de desahucio va dirigida exclusivamente a aquellos poseedores

que ostentan la propiedad en **precario**, y no a edificantes de buena fe con derecho a retención, respetuosamente, disiento.

I

En noviembre de 1997 Oscar Acosta Rodríguez (Acosta Rodríguez o recurrido) permitió a Luis A. Ghigliotti Lagares (Ghigliotti Lagares o peticionario), que utilizara la parte posterior de su negocio de venta de equipos agrícolas para que almacenara sus propios componentes agrícolas de forma gratuita. Aproximadamente para mediados del año 1999, el recurrido le notificó a Ghigliotti Lagares que necesitaba el área que le había permitido utilizar hasta ese momento. En vista de ello, Acosta Rodríguez le ofreció al peticionario un predio de terreno frente a su negocio, para que construyera un almacén, por el cual suscribirían un contrato de arrendamiento posteriormente. Vista la oferta, el peticionario aceptó.

Por consiguiente, Ghigliotti Lagares comenzó a realizar mejoras al local. Estas consistieron en la nivelación del terreno, la instalación de una verja de tela metálica alrededor de este y la construcción de un techo de aluminio.[4]

---

[4] Según surge de las determinaciones de hechos realizadas por el foro primario, y conforme al testimonio del Sr. Israel Sepúlveda quien es empleado del recurrido, "…recordaba que para el mes de diciembre de 1999, el predio de terreno donde se encontraba el demandado se encontraba nivelado con material de relleno y tenía una verja de alambre eslabonado (cyclon fence) [sic] alrededor del local. Que trabajó en la construcción de un domo de

Así las cosas, en enero del año 2000 las partes intentaron consumar un contrato de arrendamiento el cual no fue firmado, debido a que el peticionario estaba en desacuerdo con algunas de las cláusulas contenidas en el mismo. No obstante, aun cuando las partes no habían suscrito un contrato por escrito, sí testificaron haber llegado a unos acuerdos en relación al canon de arrendamiento.[5]

Así pues, en febrero del año 2000 Ghigliotti Lagares le pagó al recurrido la renta correspondiente a los meses de enero, febrero y un mes adicional de depósito.[6] Sin embargo, no fue hasta el 18 de abril de 2000 que finalmente suscribieron el contrato de arrendamiento. En cuanto al contenido del contrato, las partes acordaron que:

> El arrendatario no podría efectuar mejoras de clase alguna en la propiedad objeto de este contrato a no ser que se obtenga previamente y por escrito de el arrendador, permiso para efectuarlas, disponiéndose que una vez realizadas las mejoras, si fueren permanentes como lo son las estructuras de concreto adheridas al inmueble, estas quedarían a

---

aluminio para establecer el negocio del demandante y recuerda claramente que inauguraron el domo de aluminio para el mes de enero de 2000". Véase, Apéndice de la petición de *certiorari*, pág. 72.
[5] Id.
[6] En apoyo a estas declaraciones, se ofreció por estipulación de las partes el (Exhibit II Est.). Este documenta que a fecha de febrero de 2000 Ghigliotti Lagares le hizo entrega del cheque número 4319 al señor Acosta Rodríguez por cantidad de $675.00 para el pago de renta de los meses de enero, febrero y un mes de depósito. El canon de arrendamiento quedó establecido en $250.00 mensuales, más la cantidad de $25.00 de penalidad en los atrasos del pago de renta. Id.

beneficio de el arrendador sin que viniera este obligado a pagar valor alguno por ellas.[7]

En cumplimiento de los acuerdos contractuales, el peticionario sufragó el canon de arrendamiento ininterrumpidamente desde el mes de enero de 2000 hasta el mes de noviembre de 2007 cuando dejó de pagar el mismo. En respuesta a ese proceder, el 18 de octubre de 2008 los recurridos presentaron ante el Tribunal de Primera Instancia una demanda de desahucio en contra de Ghigliotti Lagares, y la Sociedad Legal de Gananciales compuesta por este y Jane Doe.

Consecuentemente, el 10 de marzo de 2009 los peticionarios contestaron la demanda sin evidenciar pago alguno sobre los cánones vencidos del alquiler. Además reconvinieron, aduciendo que tienen derecho a retener la propiedad hasta tanto no se le repaguen las cantidades invertidas en concepto de mejoras hechas al local comercial.

Luego de varias incidencias procesales, se celebró juicio el 13 de enero de 2010. En la primera comparecencia, el Tribunal de Primera Instancia declaró no ha lugar la moción de sentencia sumaria presentada por los recurridos. **Asimismo, convirtió el caso de epígrafe en uno de desahucio ordinario.**

Así las cosas, el 7 de abril de 2011 se dictó sentencia condenando a los recurridos a satisfacer el

---

[7] Id., pág. 167.

monto de seis mil setenta y siete dólares con noventa y cinco centavos ($6,077.95) que corresponden a las mejoras realizadas a la propiedad hasta el 18 de diciembre de 1999, antes de ser efectivo el contrato de arrendamiento.[8]

Por otra parte, el foro primario resolvió declarando con lugar el desahucio y ordenó a la parte peticionaria a satisfacer el monto de cuarenta y un (41) mensualidades vencidas a razón de doscientos setenta y cinco dólares ($275.00), para un total de once mil doscientos setenta y cinco dólares ($11,275.00). En adición impuso tres mil dólares ($3,000.00) por honorarios de abogado.

Inconforme, Ghigliotti Lagares recurrió mediante recurso de *apelación* ante el Tribunal de Apelaciones. En esencia, arguyó que el foro primario erró al no reconocer su derecho de retención como constructor de buena fe,

---

[8] Testificó el señor Ghigliotti Lagares que el 19 de diciembre celebró su fiesta navideña y ya existía el local verjado, un techo de aluminio y un piso de concreto. Además, declaró que a fecha de 31 de diciembre de 1999 había terminado la totalidad de la construcción existente en el local arrendado y que la misma se encuentra al día de hoy en iguales condiciones desde esa fecha. Sostuvo que desde la fiesta de navidad de 18 de diciembre de 1999 hasta el 31 de diciembre de 1999, estuvo realizando trabajos de su negocio todos los días de la semana, inclusive los domingos. De acuerdo a la prueba presentada, el foro primario concluyó que el peticionario tiene derecho a que se le reconozca un crédito de $6,077.95 por los gastos incurridos en el local comercial. No obstante, el Tribunal de Primera Instancia restó credibilidad al testimonio de Ghigliotti Lagares en el sentido que pudiera construir la totalidad de la edificación existente en el término de 13 días, desde 18 de diciembre de 1999 hasta el 31 de diciembre de 1999, máxime cuando el mismo peticionario testificó que ocupó la totalidad de su tiempo, los siete días de la semana en el desempeño de su trabajo.

conforme al Art. 297 del Código Civil, 31 L.P.R.A. sec. 1164. Además, alegó que el Tribunal de Primera Instancia erró en requerir la otorgación de una fianza o la consignación de los cánones de arrendamiento como requisito para acudir en apelación, ya que el pleito se había convertido en uno ordinario.

El foro apelativo intermedio resolvió en lo pertinente:

> Del examen del recurso ante nuestra consideración no surge que la parte apelante, señor Ghigliotti haya presentado fianza alguna en apelación contra la sentencia que ordena su desahucio. Tampoco surge que éste haya consignado el monto de la deuda por los cánones de arrendamiento no pagados a la parte demandante. El señor Ghigliotti aduce que no procede imponer tal requisito de fianza por tratarse de un pleito de desahucio tramitado por la vía ordinaria.
>
> El examen de la disposición del Artículo 631 *supra*, y nuestra jurisprudencia, no hace distinción alguna en cuanto a que el requisito de fianza sea por razón de que el pleito sea tramitado de forma ordinaria.
>
> [...]
>
> En consecuencia, este foro apelativo carece de jurisdicción para entender en los meritos del recurso ante nuestra consideración, por lo que procede la desestimación del recurso.[9]

No conteste con esta determinación, el peticionario presentó ante este Tribunal el recurso de *certiorari* de epígrafe en el que plantea el siguiente error:

---

[9] Véase, Apéndice de la petición de *certiorari*, págs. 21-22.

**Erró el honorable Tribunal de Apelaciones al declararse sin jurisdicción bajo el fundamento de que el peticionario debió cumplir con las disposiciones del artículo 631 del Código de Enjuiciamiento Civil.**

Atendida la petición, el 30 de junio de 2011 concedimos al recurrido un término de 10 días para que mostrara causa por la cual no debiera expedirse el recurso. El recurrido así lo hizo. Contando con el beneficio de la comparecencia de ambas partes, este Tribunal ha decidido confirmar la sentencia apelada. No estamos contestes, por las razones que pasamos a exponer.

II

A

El Art. 1433 del Código Civil, 31 L.P.R.A. sec. 4012, establece que el contrato de arrendamiento de cosas es aquel donde "una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto". El arrendador está obligado a entregar la cosa objeto del contrato y mantener al arrendatario en el goce pacífico de la cosa por el término que dure el contrato. Por su parte, el arrendatario deberá prestar el precio pactado  y usar la cosa arrendada como un diligente padre de familia. Véanse, Arts. 1444-1445 del Código Civil, 31 L.P.R.A. sec. 4051-4052. Cuando el arrendatario incumple su obligación de pago, se abren las puertas a que el arrendador inicie una acción de desahucio judicial. Véase, Art. 1459 del Código Civil, 31 L.P.R.A. sec. 4066.

A tenor con lo anterior, nos advierte Albaladejo que "el desahucio no es una de las formas de terminar el arrendamiento, sino un medio de recobrar judicialmente la cosa inmueble arrendada, cuando aquél se acaba por la concurrencia de ciertas causas extintivas." Albaladejo y otros, _Comentarios al Código Civil y compilaciones forales_, 3ra. ed., Madrid, Ed. Edersa, 1997. T. XX, págs. 1255-1256.

Además Lucas Fernández haciendo mención a Puig Brutau nos indica que:

> …ante los casos que contempla el artículo 1.569[10], subraya la peculiaridad del arriendo como contrato que origina una relación de hecho entre la persona del arrendatario y la cosa del arrendador; lo que hace que aparezca en segundo plano la mera facultad de éste de desligarse de la obligación, pues lo que principalmente importa es recuperar la cosa arrendada. Y aunque el arrendador debería limitarse a ejercitar contra el arrendatario las acciones derivadas del contrato, como, en definitiva, -dice- se trata de recuperar una cosa, se emplea para tal finalidad la acción de desahucio que actúa como una reivindicatoria simplificada. Albaladejo y otros, _op. cit._, pág. 1256.[11]

Como es sabido, el desahucio es una acción especial de carácter sumario, pues responde al interés gubernamental de atender prioritariamente la causa de acción de cualquier titular que vea interrumpido su derecho a poseer y disfrutar un inmueble de su propiedad. Art. 620 del Código

---

[10] El Art. 1459 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4066, proviene del Art. 1.569 del Código Civil de España.

[11] Véase, además, P. Brutau, _Fundamentos de Derecho Civil_, T. II, Barcelona, 1956, págs. 296 y ss.

de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2821; Crespo Quiñones v. Santiago Velázquez, 176 D.P.R. 408 (2009). Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 234-235 (1992); Mora Dev. Corp. v. Sandín, 118 D.P.R. 733, 749 (1987).

Por consiguiente, es en el proceso de desahucio que se protege la propiedad del arrendador, para que la posesión de la cosa otorgada a persona ajena vuelva a su dueño original.  Es por ello que su naturaleza requiere que se atienda de forma expedita y sumaria. Predicado en la máxima de que "la propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquier otra". Art. 280 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1111.

En esencia, la acción de desahucio es una acción posesoria, reconocida por su característica rápida y sumaria. Sobre este particular, Cuevillas Sayrol expone que el desahucio es

> un proceso de cognición especial y sumaria que tiene por objeto la desposesión del demandado (*dejacio*) y consecuente recuperación posesoria del actor, previa en su caso, resolución del contrato de arrendamiento u otra figura afín en cuya virtud venía poseyendo el demandado.
>
> […]
>
> [E]l juicio de desahucio es un proceso de carácter sumario- entendiendo como tal aquel que tiene limitados los medios de ataque o defensa o, lo que es lo mismo, tiene limitada la cognición.  Por ende, tratándose de un proceso sumario, su utilización no es preceptiva, sino facultativa o electiva. **Si el actor pretende acumular otras acciones que no tengan cabida en**

**el juicio especial sumario de desahucio puede perfectamente acudir directamente al juicio plenario [declarativo ordinario].**

J. A. Cuevillas, <u>Procesos arrendaticios urbanos y comunes</u>, Barcelona, Ed. J.M. Bosch, 1996, págs. 118-119.

Cónsono con lo antes expresado, Mucius Scaevola nos define la acción de desahucio como "un remedio legal, de carácter restitutorio y generador de un procedimiento sumario, concedido al arrendador contra el arrendatario o el precarista para recuperar la posesión natural de la cosa arrendada o cedida en precario". Albaladejo y otros, <u>op. cit.</u>, pág. 1256.

En el pasado hemos resuelto que la característica medular de un procedimiento civil sumario es lograr de la forma más rápida y económica posible la reivindicación de determinados derechos, reduciendo al mínimo constitucionalmente permisible el elenco de garantías procesales. <u>Turabo Ltd. Partnership v. Velardo Ortiz</u>, supra. Por lo demás, prescinde de ciertos trámites comunes al proceso ordinario, sin negar al demandado o querellado una oportunidad real de presentar efectivamente sus defensas. Id. Es por ello que debe ser utilizado según se haya reglamentado por los cuerpos legales.

Sobre este particular, Caballero Gea nos indica que la acción de desahucio es un procedimiento sumario y especial, **"en contraposición al [procedimiento] ordinario"**. Énfasis nuestro. J. A. Caballero Gea, <u>El</u>

desahucio por precario: problemática judicial, Pamplona,

Ed. Arazandi, 1983, pág. 53.

> En lo pertinente, Lucas Fernández postula que:
> **[l]a acción de desahucio no puede ejercitarse cuando entre las partes hay complejidad de relaciones jurídicas que exigen determinar los derechos recíprocos en orden a las mismas.** La jurisprudencia es reiterada en este sentido… la acción de desahucio sólo procede cuando entre los litigantes no existen otros vínculos que los derivados del contrato de arrendamiento o de la ocupación de la cosa en precario sin relación con otro título en que pueda fundarse la posesión y disfrute de la misma… (Énfasis suplido.)
> Albaladejo y otros, op. cit., pág. 1256.[12]

Acorde con lo intimado esta Curia ha expresado que,

siendo la posesión del inmueble lo único que se intenta

recobrar mediante la referida acción sumaria, los

conflictos de título no pueden dilucidarse en un

procedimiento de desahucio. C.R.U.V. v. Román, 100 D.P.R.

318, 321 (1971); Negrón v. Corujo, 67 D.P.R. 398, 403

(1947); Escudero v. Mulero, 63 D.P.R. 574, 588 (1944).

Esto porque podría privar a una de las partes de su

propiedad sin el debido proceso de ley, derecho

salvaguardado por nuestra Constitución. Véase, Art. II,

Sec. 7 Const. P.R., L.P.R.A., Tomo 1.

En Aybar v. Jiménez, 60 D.P.R. 745, 748 (1942),

resolvimos que una casa de vivienda, una edificación de

carácter permanente, no constituye una mejora útil o de

recreo. Cuando esta es construida de buena fe, con

---

[12] Véase, además, Scaevola, Código Civil, T. XXIV, 1ª parte, Madrid, 1952, págs. 597 y ss.

conocimiento del dueño del terreno que lo arrendó para dicho fin y sin que se pactara nada con el que edificó para regular los derechos de uno y otro con respecto a lo edificado, no procede el desahucio. Véanse, Crespo Quiñones v. Santiago Velázquez, supra; C.R.U.V. v. Román, supra; Negrón v. Corujo, supra.

Lo anterior está predicado a los efectos de que no es el procedimiento sumario de desahucio el vehículo procesal adecuado para determinar el montante de la reclamación a que pueda tener derecho un demandado que ha edificado con carácter permanente con el consentimiento del dueño del terreno. En cambio, a menos que exista un pacto que regule los derechos de los litigantes, al desestimarse la demanda de desahucio siempre se hará sin perjuicio de que se recurra a la acción ordinaria correspondiente dentro de la cual podrán dirimirse los derechos de una y otra parte. Aybar v. Jiménez, supra, pág. 749.

Por otra parte, la necesidad de convertir el procedimiento sumario en uno ordinario no puede ocasionar dilaciones innecesarias, por lo que el demandado deberá establecer *prima facie* los méritos de su defensa. Marín v. Montijo, 109 D.P.R. 268, 278 (1979). De igual forma, no puede redundar en la creación de una regla automática. Por ello, la guía en estos casos deberá ser el sano discernimiento judicial. Turabo Ltd. Partnership v. Velardo Ortiz, supra, pág. 241.

Concretamente, una vez se esgrimen las defensas pertinentes por el demandado, el juzgador deberá auscultar si estas son meritorias, los hechos específicos que aduce **y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario**. Íd., págs. 245-246.

B

El Art. 621 del Código de Enjuiciamiento Civil, 32 L.P.R.A. 2822, establece que "procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o **disfrute precariamente**, sin pagar canon o merced alguna." Énfasis nuestro.

La figura del precarista se remonta al Derecho Romano. En la antigua Roma "el precario constituía una evidente situación de hecho, de verdadera "possessio" en sentido técnico, cuyo titular estaba protegido frente a terceros por los interdictos posesorios." J. A. Caballero Gea, op. cit., pág. 19. Además, se trataba del otorgamiento de una cosa o derecho por parte de su propietario de forma gratuita, con la opción de ser poseída nuevamente cuando le plazca.

Esta figura se hizo extensiva a España "por la jurisprudencia recaída con la relación al Artículo 1.565 de la Ley Procesal, que recogió el criterio ya mantenido en la ley de 18 de junio de 1877". J. A. Caballero Gea,

op. cit., pág. 19. Asimismo, el Tribunal Supremo de España

en su resolución del 5 de diciembre de 1934 nos indica,

> que el precario a que alude el art. 1.565 de la
> Ley de Enjuiciamiento Civil, no sólo se refiere
> a la acepción dada por el Derecho Romano, sino
> que se extiende a todos cuantos, sin pagar
> merced, poseen un inmueble sin título o con
> título ineficaz para enverar el dominical que
> ostenta quien promueve el desahucio.
> Véase, J. A. Caballero Gea, op. cit., pág. 20.

Ciertamente la figura del precarista en el Código de

Enjuiciamiento Civil de Puerto Rico tiene su origen en el

Artículo 621, proveniente del Artículo 1.565 de Ley de

Enjuiciamiento Civil Española. Por consiguiente, es un

precarista, según nuestro ordenamiento jurídico, aquel que

ostenta propiedad perteneciente a otro de forma gratuita y

sin el consentimiento de éste. A esos efectos el

procedimiento adecuado y expedito para obtener la posesión

de la propiedad por el dueño es el desahucio.

En cuanto a ello, la jurisprudencia española ha

definido al precario como "la ocupación sin título, o en

virtud de un título nulo, o que haya perdido su validez,

una mera ocupación tolerada, sin contraprestación, y

gratuita (SS. 27-11-1968, R. 5820; 8-11-1968, R. 4965; 27-

10-1967, R. 4039; 7-11-1958, R. 3434)." P. de Villanueva,

Proceso de cognición y juicios verbal, y de desahucio, 2da

ed., Pamplona, Aranzadi, 1978, págs. 343-344.

Ciertamente, la situación del precarista es una donde

no puede haber posibilidad de título. En estos casos es de

aplicación el procedimiento dispuesto por la Ley de

Desahucio que autoriza la acción por el dueño de una finca contra cualquier persona que detente la posesión material o disfrute precariamente de la misma sin pagar canon o merced alguna. C.R.U.V. v. Román, supra, pág. 325.

En C.R.U.V. v. Román, supra, acogimos lo resuelto por el Tribunal Supremo de España en su sentencia de 3 de mayo de 1963, por el cual se exige para que prospere un desahucio en precario la presencia de dos fundamentos. A saber, que el actor de la acción tenga la posesión real de la finca a título de dueño, de usufructuario o cualquier otro que le de derecho a disfrutarla y que el demandado haya ocupado el inmueble sin otro título que la mera tolerancia del dueño o poseedor, ya por nunca tener título o por haberlo perdido.

Es por ello que el que construye de mala fe se considera un precarista, ya que pierde lo edificado sin derecho a indemnización. Por ende, procede contra él una acción de desahucio en precario. Art. 298 del Código Civil, 31 L.P.R.A. sec. 1165. Véase, también, A.T.P.R. v. Padín Santiago, 104 D.P.R. 426, 428 (1975).

Contrario es aquel que construye en suelo ajeno con el consentimiento del dueño, **pues este se entiende que es un edificante de buena fe, quien además posee un título sobre lo edificado. Por lo tanto, tendrá derecho a retener el terreno ajeno hasta tanto no se le indemnice por lo edificado.** Énfasis nuestro. Véanse, Art. 297 del Código

Civil de Puerto Rico, 31 L.P.R.A. 1164; Crespo Quiñones v. Santiago Velázquez, supra; C.R.U.V. v. Román, supra.

En otras palabras, "bastará que un demandado en desahucio produzca prueba suficiente ante la corte para demostrar que tiene algún derecho a ocupar dicho inmueble y que tiene un título tan bueno o mejor que el del demandante para que surja un conflicto de título que haga improcedente la acción". Escudero v. Mulero, supra, pág. 589.

En virtud de ello, la buena fe del arrendatario se adquiere no meramente cuando construye con permiso del propietario, sino cuando este "con su anuencia procede a relevarlo en el ejercicio de una obligación que la ley le impone, conservándole un elemento de su patrimonio cuyo deterioro es inminente". Marín v. Montijo, supra, pág. 277. (citas internas omitidas.)

No obstante, al ser el desahucio un procedimiento de naturaleza sumaria de gran utilidad, no basta con solo aducir que se han hecho mejoras necesarias con el consentimiento expreso del arrendador. Así pues, le corresponde al demandado demostrar fehacientemente el mérito de su reclamo.

Es por ello que debe, en el momento adecuado, "presentar prueba que lleve al ánimo del juzgador la razonable certeza de que habrá de demostrar en su día que con el expreso consentimiento del arrendador demandante, ha ejecutado mejoras necesarias en la propiedad arrendada,

cuyo costo no le ha sido satisfecho". <u>Marín v. Montijo</u>, supra, pág. 278; <u>C.R.U.V. v. Román</u>, supra, pág. 322.

C

El Art. 631 del Código de Enjuiciamiento Civil dispone lo siguiente:

> No se admitirá al demandado el recurso de apelación si no otorga fianza, por el monto que sea fijado por el tribunal, para responder de los daños y perjuicios que pueda ocasionar al demandante y de las costas de apelación; pudiendo el demandado, cuando el desahucio se funde en falta de pago de las cantidades convenidas, a su elección, otorgar dicha fianza o consignar en Secretaria el importe del precio de la deuda hasta la fecha de la sentencia. 32 L.P.R.A. sec. 2832.

El requisito que obliga a un demandado a prestar fianza en apelación es jurisdiccional en todo tipo de pleito de desahucio, aun cuando este no está fundamentado en falta de pago. <u>Blanes v. Valdejulli</u>, 73 D.P.R. 2, 5 (1952). El propósito de ello consiste en que la fianza no existe para garantizar únicamente los pagos adeudados sino también los daños resultantes de mantener en suspenso el libre uso de la propiedad afectada mientras se dilucida la apelación. <u>Crespo Quiñones v. Santiago Velázquez</u>, supra, págs. 413-414. "Lo anterior aconseja que sea el Tribunal de Primera Instancia el foro que fije la fianza, como paso previo y jurisdiccional a la radicación del recurso de apelación". Exposición de Motivos de la Ley Núm. 378 de 3 de septiembre de 2000, que enmendó el Art. 630, *supra*. "Nada de esto cambió con la aprobación de la Ley de la

Judicatura de 2003, *supra*, ni con la Ley Núm. 129, *supra*". Íd., pág. 414.

Teniendo presente que la prestación de la referida fianza constituye un requisito jurisdiccional, si el demandado no cumple con dicho requisito, ni consigna los cánones adeudados cuando el desahucio se funde en la falta de pago, el Tribunal de Apelaciones no adquiere jurisdicción para atender el recurso de apelación. Íd.

Por otro lado, aquellos demandados cuya insolvencia económica ha sido reconocida por el tribunal están exentos de cumplir con dicho requisito. Íd.; Bucaré Management v. Arriaga García, 125 D.P.R. 153, 158 (1990); Molina v. C.R.U.V., 114 D.P.R. 295, 297-298 (1983). Esto pues dicho precepto se encuentra en armonía con la intención del legislador de garantizar el acceso a los tribunales de los litigantes insolventes. Íd.; Bucaré Management v. Arriaga García, supra, pág. 157.

### III

El presente caso nos brinda la oportunidad de resolver si es necesaria la prestación de una fianza para apelar de una sentencia en un caso de desahucio cuando el apelante es un edificante de buena fe.

El peticionario alega que las disposiciones del Artículo 631 del Código de Enjuiciamiento Civil, *supra*, no aplican en este caso ya que el pleito de desahucio fue tramitado en un juicio ordinario por el Tribunal de Primera Instancia. Además, aduce que al haber sido

reconocido por el foro primario como un edificante de buena fe, ostenta un derecho de retención sobre la propiedad hasta que le sean repagadas las cantidades invertidas en mejoras necesarias. Luego de analizar los hechos pertinentes y el derecho aplicable, resolvería que son meritorios los planteamientos del peticionario. Veamos.

Como parte de las conclusiones a las que llegó el foro primario en su Sentencia de 7 de abril de 2011, es de particular importancia la siguiente determinación:

> En cuanto a las mejoras que reclama la parte demandada reconviniente, realizadas a la propiedad arrendada, durante su estadía hasta el 18 de diciembre de 1999, **antes de estar efectivo el contrato de arrendamiento, no tenemos duda alguna de que éstas constituyen mejoras, las cuales deben ser compensadas por el dueño del terreno.** El Tribunal ha dado credibilidad al testimonio del Sr. Luis A. Ghigliotti Lagares en cuanto a los Exhibits ofrecidos y admitidos en evidencia.
>
> **Aquí se trata de reparaciones indispensables y necesarias para conservar la propiedad en estado de servir al uso que ordinariamente se le destina. Las mejoras eran necesarias para el particular y exclusivo uso que pretendió darle el demandado, ya que las mismas son mejoras indispensables y necesarias o de reparación o seguridad que se hicieran en la cosa (la propiedad arrendada) para impedir su pérdida o deterioro.** (Punta Borinquen Shopping Center, Inc. v. Pérez Feliciano, supra.).
>
> Éstas fueron realizadas por voluntad y a iniciativa de la parte demandada, **y que fueran realizadas a ciencia y paciencia del demandante, con el consentimiento tácito o expreso del arrendador.** (Marchand González v. Montes Viera, ante; Berrocal v. Tribunal de Distrito, supra; Santiago v. Berlingeri, supra).

El demandado Sr. Luis A. Ghigliotti Lagares presentó en evidencia unas facturas que no determinaron ni pudieron precisar si la usó en el terreno arrendado o fue en sus obras como contratista.

Por lo tanto, por la credibilidad adjudicada y el valor probatorio de la prueba sometida, **concluye el Tribunal que la parte demandada reconviniente tiene derecho a reclamar que se le indemnice por las mejoras realizadas**, conforme hemos expuestos [sic] en este escrito que a tenor con la prueba sometida y admitida en evidencia en cuanto a los siguientes gastos:

[…]

Dichas cantidades ascienden a la cantidad de $6,077.95.

Véase, Apéndice de la petición de *certiorari*, págs. 77-78.

Como puede observarse, el Tribunal de Primera Instancia llegó a la conclusión de que el peticionario realizó unas mejoras necesarias en la propiedad de Acosta Rodríguez. Además, estas fueron hechas a ciencia y paciencia del recurrido, es decir, fueron consentidas tácitamente. Nótese que el peticionario solo posee un crédito sobre las mejoras realizadas hasta el 18 de diciembre de 1999, antes de que las partes pactaran un contrato de arrendamiento.

Por lo tanto, no son aplicables las disposiciones del contrato de arrendamiento firmado en abril de 2000 que claramente establece que las mejoras realizadas por el peticionario quedarían a beneficio del arrendador sin que este estuviese obligado a pagar valor alguno por ellas. En ausencia de una disposición contractual que regule la

relación entre las partes, entran en vigor los preceptos del Código Civil referentes a la accesión y al constructor de buena fe en suelo ajeno dispuestos en su Art. 297.

Asimismo, es inevitable la conclusión de que la construcción del almacén se hizo a ciencia y paciencia de Acosta Rodríguez, por lo cual es forzoso colegir que se trata de un edificante de buena fe ya que construyó con el consentimiento del arrendador.

Distinto a lo que plantea el recurrido, el peticionario no puede ser considerado como un precarista. Según discutimos anteriormente, un precarista es una persona que no tiene derecho o título alguno que justifique la posesión de la cosa. En este caso, el peticionario ha sido reconocido como un constructor de buena fe, por lo tanto posee un derecho de retención sobre la cosa hasta que sea indemnizado por el propietario del terreno.

El expediente refleja que durante el transcurso del pleito las partes presentaron memorandos respecto a si el caso debía tramitarse por la vía sumaria.[13] El foro primario no tomó una determinación inmediata sobre el particular, y permitió que las partes realizaran un amplio descubrimiento de prueba que incluyó deposiciones, solicitudes de producción de documentos, vistas sobre el estado de los procedimientos y conferencias con antelación al juicio.

---

[13] Véase, Apéndice de la petición de *certiorari*, págs. 155, 160.

Tiempo después y llegado el día del juicio, el recurrido le solicitó al tribunal que se expresara sobre si el procedimiento se estaba tramitando por la vía sumaria. El Tribunal expresamente resolvió: "En cuanto a la solicitud de que se aclare el tipo de procedimiento en el presente caso, se hace constar que es uno **ordinario**".[14]

Cónsono con lo anterior, en la sentencia emitida por el foro primario se reafirma que el caso se dilucidó por la vía ordinaria al tribunal expresar: "Llamado el caso se determinó por el Tribunal declarar No ha Lugar (sic) [la] Sentencia Sumaria sometida por la parte demandante y se convirtió el caso en un desahucio ordinario".[15]

A tenor con lo anterior, no debe albergarse duda alguna de que el caso ha sido tramitado por la vía ordinaria. Así pues, para resolver la controversia que nos ocupa es necesario examinar la naturaleza del pleito que se nos presenta, para así determinar si es requerida la prestación de fianza según dispone el Art. 631 del Código de Enjuiciamiento Civil, *supra*. Veamos.

El Art. 631 del Código de Enjuiciamiento Civil, *supra*, forma parte del entramado procesal del procedimiento sumario de desahucio. Conscientes del carácter sumario de la acción de desahucio, la Asamblea Legislativa aprobó la Ley Núm. 129-2007, 32 L.P.R.A. sec.

---

[14] Véase, Minuta de 13 de enero de 2011, Apéndice de la petición de *certiorari*, pág. 99.
[15] Véase, Sentencia de 7 de abril de 2011, Apéndice de la petición de *certiorari*, pág. 68.

2832, "con el propósito de agilizar, clarificar y uniformar el derecho aplicable al procedimiento de desahucio contra personas que detentan la posesión material o el disfrute de una propiedad inmueble **precariamente**, sin pagar canon o merced alguna;…" (Énfasis nuestro.) Véase, Exposición de Motivos de la Ley Núm. 129-2007, *supra*.

Ciertamente, de la citada Exposición de Motivos se deduce un aspecto importante del Art. 631. Esto es, que la acción de desahucio va dirigida única y exclusivamente a aquellos que posean el bien en precario. Es en respecto a esos casos que el proceso de desahucio revela su naturaleza sumaria y expedita.

En virtud de este axioma, el requisito establecido en el Art. 631 va en perfecta consonancia con las acciones dirigidas contra precaristas que no tienen título o justificación alguna para retener la cosa mientras apela de una determinación judicial. Por el contrario, cuando se trata de un constructor de buena fe en suelo ajeno, reconocido mediante sentencia, este obtiene un derecho a retener la cosa hasta que se le compense conforme al Art. 297 del Código Civil, *supra*. En esos casos, la premisa de precariedad no está presente y lo que procede es un trámite judicial ordinario, en todas las etapas del proceso.

Conforme a la discusión precedente, no es lógico condicionar la apelación del demandado, como resuelve la

mayoría, a que cumpla con unos requisitos cuya razón de ser es contraria a su derecho de retención. Recordemos que el propósito del Art. 631 no es solo recuperar los pagos adeudados, sino también los daños resultantes de mantener congelado el libre uso de la propiedad afectada mientras se dilucida la apelación. Por lo tanto, si el Art. 297 le reconoce al constructor de buena fe el derecho a retener la cosa hasta que se le indemnice, sería un contrasentido requerir fianza como requisito jurisdiccional en apelación. Por el contrario, resulta manifiesto que el propósito del Art. 631 no es que se aplique este requisito a demandados reconocidos como edificantes de buena fe.

Como hemos visto, en este caso se le reconoció al peticionario, mediante sentencia, los elementos necesarios para considerarlo un constructor de buena fe en suelo ajeno. Las determinaciones de hechos expuestas en la sentencia del Tribunal de Primera Instancia no dejan duda alguna respecto a que Ghigliotti Lagares construyó con el consentimiento del recurrido y que no existía un contrato en ese momento que rigiera la relación entre las partes.

En torno a esta realidad fáctica, la determinación de una mayoría de este Tribunal se equivoca al no reconocer que el foro primario, para todos los efectos, determinó que el peticionario es un constructor de buena fe. Si bien es cierto que el tribunal no utiliza esas palabras exactas, sí expresa que "se trata de reparaciones indispensables y necesarias para conservar la propiedad en

estado de servir al uso que ordinariamente se le destina. Las mejoras eran necesarias para el particular y exclusivo uso que pretendió darle el demandado, ya que las mismas son mejoras indispensables y necesarias o de reparación o seguridad que se hicieran en la cosa (la propiedad arrendada) para impedir su pérdida o deterioro" y que "[é]stas fueron realizadas por voluntad y a iniciativa de la parte demandada, y que fueran realizadas a ciencia y paciencia del demandante, con el consentimiento tácito o expreso del arrendador".[16]

Siendo ello así, colegimos que el peticionario es un constructor de buena fe respecto a todo aquello que el foro primario resolvió se había construido **previo** a la consumación del contrato de arrendamiento. Respecto a lo construido a esa fecha, el peticionario no es un precarista y por tal razón no procede la imposición de una fianza para acudir en apelación, pues este mecanismo forma parte de las disposiciones procesales dirigidas a salvaguardar los derechos del dueño contra personas que poseen la cosa injustificadamente y en precario.

La conclusión no puede ser otra. En el pasado, hemos resuelto que en situaciones donde existe un conflicto de título, el caso debe tramitarse por la vía ordinaria.[17] Somos del criterio que cuando al demandado se le ha reconocido un crédito por mejoras realizadas en propiedad

---

[16] Véase, Apéndice de la petición de *certiorari*, *supra*.
[17] C.R.U.V. v. Román, supra.

ajena, y cuando el trámite del desahucio se ha cambiado a la vía ordinaria, no es necesario prestar una fianza para acudir en apelación. Ahora bien, el hecho de que el caso haya sido tramitado por la vía ordinaria, de por sí solo, no es razón suficiente para automáticamente eximir al demandado del pago de la fianza para acudir en apelación. Para que se le releve de esta obligación, tendrá que probarse que en efecto el demandado posee un crédito con respecto a la propiedad objeto de la acción de desahucio.

IV

Por los fundamentos antes expuestos, expediría el recurso de *certiorari* y revocaría la sentencia del Tribunal de Apelaciones por la cual se declara sin jurisdicción para atender la apelación. En consecuencia, ordenaría la devolución del caso a ese foro para que resuelva si erró el Tribunal de Primera Instancia al no permitirle al peticionario presentar prueba sobre el costo de reproducción, menos depreciación, del almacén según la etapa de construcción en que se encontraba a diciembre de 1999.

Edgardo Rivera García
Juez Asociado